147 N.J. Super. 404 (1977)
371 A.2d 358
GENERAL ACCIDENT GROUP, PLAINTIFF,
v.
WILLIAM J. SHIMP ET AL., DEFENDANTS. WILLIAM J. SHIMP, AS GENERAL ADMINISTRATOR OF THE ESTATE OF ANN M. SHIMP, ET AL., PLAINTIFFS,
v.
GENERAL ACCIDENT GROUP, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided January 20, 1977.
*406 Mr. J. Robert McGroarty attorney for General Accident Group.
Mr. Louis D. Fletcher attorney for Shimp (Messrs. Falciani & DiMuzio, attorneys).
KING, J.S.C.
This matter is presented to the court on a motion for summary judgment raising several distinct issues. On June 8, 1973 plaintiff's wife and child were killed as a result of injuries received in multi-vehicle accident on Interstate 295 in Greenwich Township, Gloucester County. An action was subsequently instituted seeking full no-fault benefits under a policy of insurance issued to plaintiff by the General Accident Group covering the automobile driven by plaintiff's wife and listing her as an insured. As part of that policy additional personal injury protection benefits were purchased by plaintiff in the amount indicated under option five. The plaintiff now seeks to recover the full amount of this additional personal injury protection endorsement as survivor benefits. This would include the following:
(a.) Maximum essential services benefits equalling $14,600.
(b.) The $10,000 added death benefit as a result of the death of plaintiff's wife.
(c.) The $1,000 funeral expense benefit as the result of the death of plaintiff's wife.
(d.) The $1,000 added funeral expense benefit as the result of the death of plaintiff's son.
Defendant carrier contends that the $4,380 for essential services already paid to the estate represents the survivor benefits payable under N.J.S.A. 39:6A-4(d) of the act with relation back to N.J.S.A. 39:6A-4(c). $4,380 is the amount payable under the basic endorsement and the statute when no additional options are purchased.
Plaintiff also filed a demand for arbitration against the defendant under the uninsured motorist provisions of the policy referred to above. This demand for arbitration was subsequently *407 amended to include the uninsured motorist coverage under an additional policy of insurance allegedly covering plaintiff at the time of the accident. It is the estate's contention that the coverage available to pay any award issued as a result of the pending arbitration proceedings should be the total of the two policies, and they so urge the court to hold as a matter of law.
Finally, a separate action was instituted in the matter by General Accident Group against plaintiff and the American Arbitration Association seeking a declaration that section three of the New Jersey basic personal injury protection endorsement is not violative of public policy. Section 3 of the endorsement provides for a reduction of any amount payable for economic loss under uninsured motorist coverage to the extent of personal injury protection (hereinafter PIP) benefits paid. It is the contention of the estate that any set-off of PIP benefits against the uninsured motorist coverage should be a set-off from the total amount of damages and not from the coverage. This suit has been consolidated with the suit instituted by plaintiff Shimp as there are overlapping issues of fact and law, and plaintiffs also move for summary judgment on this issue.
The court will first deal with those issues concerning the availability of maximum option 5 benefits as survivor benefits and will then discuss the issues of uninsured motorist coverage and its relationship with PIP benefits.

I
Although the terms of an insurance policy may also be considered in resolution of a dispute, the relevant statutory provisions control a contract of insurance. Maros v. Transamerica Ins. Co., 143 N.J. Super. 307 (Law Div. 1976); see also, Peraglia v. Jones, 120 N.J. Super. 518 (App. Div. 1972). The relevant parts of N.J.S.A. 39:6A-4 (the New Jersey Automobile Reparation Reform Act, hereinafter act) provide:

*408 Personal injury protection coverage, regardless of fault
Every automobile liability insurance policy insuring an automobile as defined in this act against loss resulting from liability imposed by law for bodily injury, death and property damage sustained by any person arising out of ownership, operation, maintenance or use of an automobile shall provide additional coverage, as defined herein below, under provisions approved by the Commissioner of Insurance, for the payment of benefits without regard to negligence, liability or fault of any kind, to the named insured and members of his family residing in his household who sustained bodily injury as a result of an accident involving an automobile, to other persons sustaining bodily injury while occupying the automobile of the named insured or while using such automobile with the permission of the named insured and to pedestrians, sustaining bodily injury caused by the named insured's automobile or struck by an object propelled by or from such automobile. "Additional coverage" means and includes:

* * * * * * * *

c. Essential services benefits.
Payment of essential services benefits to an injured person shall be made in reimbursement of necessary and reasonable expenses incurred for such substitute essential services ordinarily performed by the injured person for himself, his family and members of the family residing in the household, subject to an amount or limit of $12.00 per day. Such benefits shall be payable during the life of the injured person and shall be subject to an amount or limit of $4,380.00, on account of injury to any one person in any one accident.

d. Survivor benefits
In the event of the death of an income producer as a result of injuries sustained in an accident entitling such person to benefits under section 4 of this act, the maximum amount of benefits which could have been paid to the income producer, but for his death, under section 4 b, shall be paid to the surviving spouse, or in the event there is no surviving spouse, then to the surviving children, and in the event there are no surviving spouse or surviving children, then to the estate of the income producer.
In the event of the death of one performing essential services as a result of injuries sustained in an accident entitling such person to benefits under section 4 c. of this act, the maximum amount of benefits which could have been paid such person, under section 4 c., shall be paid to the person incurring the expense of providing such essential services.
Section 4(d) provides the amount of survivor benefits payable to the survivors of one performing essential services if only the basic level of PIP insurance is purchased.
*409 N.J.S.A. 39:6A-10 then provides:

Additional personal injury protection coverage
Insurers shall make available to the named insured covered under section 4, suitable additional first-party coverage for income continuation benefits, essential services benefits, survivor benefits and funeral expenses benefits. Income continuation in excess of that provided for in section 4 must be provided as an option by insurers to persons for disabilities, as long as the disability persists, up to an income level of $35,000.00 per year, with the excess between $5,200.00 and the amount of coverage contracted for to be written on the basis of 75% of said difference. The Commissioner of Insurance is hereby authorized and empowered to establish, by rule or regulations, the amounts and terms of income continuation insurance to be provided pursuant to this section.
When interpreting a statutory mandate a court must look to the intent of the Legislature. State v. Madden, 61 N.J. 377, 389 (1972); Reale v. Wayne Tp., 132 N.J. Super. 100, 115 (Law Div. 1975); Maros v. Transamerica Ins. Co., supra. N.J.S.A. 39:6A-16 clearly provides: "This act shall be liberally construed to effect the purpose thereof."
The Automobile Insurance Study Commission Report to the Governor and Legislature "(Reparation Reform for New Jersey Motorist)", December 1971, specifically recommended that: "[reimbursement for household services] benefits shall be available to dependent survivors where the injury is fatal" and expressed as the purpose that: "The * * * benefits * * * provide appreciable reparation for all New Jersey accident victims promptly, fairly and efficiently." Id. at xi, xii. The purpose expressed for offering excess loss coverage is to provide "for those motorists who desire a greater degree of first-party insurance protection and are willing to pay an additional premium charge." Id. at xvii.
The additional PIP endorsement issued to plaintiff did not contain a specific formula for computing survivor benefits as mandated under § 4 of the Act.[1]
*410 The endorsement only stated:
It is agreed that the New Jersey Basic Personal Injury Protection Endorsement, hereinafter called the Basic Protection Endorsement, is amended as follows, but only with respect to any amounts payable thereunder because of bodily injury to an eligible injured person who is specifically designated herein as a Person Insured for Additional Personal Injury Protection Coverage.
Therefore, we are referred back to the basic PIP endorsement for such formula. Section 1 of the basic endorsement defines survivor benefits as
"survivor benefits" means the amount or amounts payable in the event of the death of an eligible injured person as determined in subdivision (1) or (2) hereof, as appropriate;
(1) if the eligible injured person was an income producer at the time of the accident, an amount equal to the difference between $5,200 and all basic income continuation benefits paid for any loss of income resulting from his injury prior to his death;
(2) if the eligible injured person ordinarily performed essential services for the care and maintenance of himself, his family or family household, an amount not to exceed the difference between $4,380 and all basic essential services benefits paid with respect to this injury prior to death.
By requiring the use of this basic definition the company seems to contract to pay the maximum essential services benefit under option 5 as a survivor benefit. This is in addition to the "additional survivor benefit" of $10,000 payable if death occurs within 90 days of the accident. At best, the construction urged by the carrier is ambiguous. Even if another interpretation of the contract were possible, New Jersey case law clearly holds the language of insurance policies will be strictly construed against insurers and any ambiguities will be decided in favor of the insured. American Policyholders' Ins. Co. v. Portale, 88 N.J. Super. 429 (App. *411 Div. 1965); Motor Club of America Ins. Co. v. Phillips, 66 N.J. 277 (1974). It is also clear that an endorsement cannot contravene, but must be harmonious with, the applicable statute. Selected Risks Ins. Co. v. Zullo, 48 N.J. 362 (1966); Motor Club of America Ins. Co. v. Phillips, supra. This court does not find the policy to be uncertain and ambiguous in this situation. The court holds the relevant language clearly permits an interpretation in favor of the insured's recovery of the maximum "essential services" benefit under option 5 as a "survivor" benefit.
Accordingly, plaintiff is entitled to recover an essential services survivor benefit in the amount of $14,600, with credit for the $4,380 already paid. Under N.J.S.A. 39:6A-5(c) of the act, all overdue PIP coverage benefits bear simple interest at the rate of 10% a year.

II
The court next considers whether multiple policies providing uninsured motorist coverage and issued on cars owned by members of the same household can be accumulated or pyramided to provide a larger fund from which plaintiff may recover. N.J.S.A. 17:28-1.1 requires every policy to provide uninsured motorist coverage in an amount equivalent to minimum liability coverage.
At the time of the accident decedent Ann Shimp was an additional insured described in two automobile policies issued by defendant. Her surviving husband, William, was the named insured. Policy No. ACF23-657-72 described an owned automobile as a 1968 Volvo, and policy No. CA25-536-61 described a second owned vehicle as a 1963 Chevrolet. The estate does not claim a double recovery, but only seeks to have available sufficient uninsured motorist coverage to satisfy the full amount of its damages.
Our Supreme Court, in Motor Club of America Ins. Co. v. Phillips, supra, exhaustively reviewed the history of mandatory uninsured motorist coverage as well as the national *412 trends and policy arguments pertinent to the "other insurance clause." The "other insurance clause" in this case is identical to the clause in the policy in Motor Club. In that case plaintiff was a passenger in a car not owned by claimant or any member of his household, and the carrier denied coverage under plaintiff's own policy because he was covered under the host driver's policy. The Supreme Court held:
* * * The excess-escape paragraph of the other insurance provision of the instant UM endorsement is repugnant to the statute and is, as applied to the facts here presented, invalid and ineffective * * * We reserve any question as to the potential effect of the provision in relation to any different fact situation. [66 N.J. at 294]
We are here presented with a question as yet unresolved in our state. A majority of jurisdictions have adopted the position that an "other insurance clause" is repugnant to the statute when involving policies in different households. Even among this majority however, there is considerable variation in the treatment of claims on different policies issued by one insurer on several cars within the same household. Massachusetts has held the insurer liable on all such policies up to their cumulative maximum limits. Johnson v. Travelers Indem. Company, 359 Mass. 525, 269 N.E.2d 700 (Sup. Jud. Ct. 1971). In a similar situation Pennsylvania reached an opposite result. Pennsylvania's intermediate appellate court recognized the purpose of the statute to be the protection of innocent victims from irresponsible drivers in order to provide that such victims were not left completely uncompensated. An insurer in Pennsylvania is in these circumstances responsible only under the policy insuring the vehicle involved in the accident. The policies were stated to be non cumulative "attaching separately to the insured's individual automobiles, thereby precluding the pyramiding or stacking of coverages where the coverage emanated from vehicles owned by members of the same household. Nationwide Mutual Ins. Co. v. Ealy, 221 Pa. Super. 138, 139, 289 A.2d 113 (Super. Ct. 1972).
*413 Two recent New Jersey cases are of assistance in determining which alternative is declarative of our State's policy. In Allstate Ins. Co. v. McHugh, 124 N.J. Super. 105 (Ch. Div. 1973), aff'd 126 N.J. Super. 458 (App. Div. 1974), Judge Bischoff did not allow stacking of uninsured motorist coverage. Two declaration sheets were issued to the named insured, each bearing the same policy number but describing a different car. Both sheets provided for uninsured motorist coverage and two separate premiums were paid. The increased premium was justified, the court said, by the increased risk.[2] The court distinguished McFarland v. Motor Club of America Ins. Co., 120 N.J. Super. 554 (Ch. Div. 1972), which had held that an insured may proceed against other available policies when his loss exceeds the limits of one policy. In Allstate Ins. Co. v. McHugh, supra, the court held that the two declaration sheets constituted only one policy. Therefore, there were no other "available policies," as in McFarland v. Motor Club of America Ins. Co., supra, against which the insured could proceed. Allstate Ins. Co. v. McHugh, supra, is easily distinguished from the facts in the case before us; here we have two separate policies bearing totally unrelated numbers and issued for time periods which do not coincide. Therefore, the court does not find the reasoning of Allstate Ins. Co. v. McHugh, supra, relevant.
The case of Beek v. Ohio Cas. Ins. Co., 135 N.J. Super. 1 (App. Div. 1975), is also analogous to the present fact situation. In reversing the judgment of the Chancery Division the court invalidated a clause in the insured's automobile policy excluding uninsured motorist coverage when a named insured was operating a vehicle owned by him but not insured under the policy. The insured suffered damage in excess of the uninsured motorist coverage on his motorcycle *414 policy while operating that vehicle, and the case held he could recover under the uninsured motorist coverage on his automobile policy.
The court finds in the present case that there were two separate policies covering the insured for separate time periods, two premiums paid, and plaintiff has recourse against both policies to recover his full damages.

III
The final issue presented in this motion concerns the set-off provision in the basic PIP endorsement issued to plaintiffs. Defendants ask for a judgment in declaratory form holding this setoff not void as violative of public policy. The applicable portion reads:
In consideration of the insurance afforded under Sections I and II of this endorsement, and the adjustment of applicable rates:
a) any amount payable for economic loss under the Protection Against Uninsured Motorists (Family Protection) Coverage shall be reduced by the amount of any personal injury protection benefits paid or payable under this or any other automobile insurance policy because of bodily injury to an eligible injured person ...
N.J.S.A. 17:28-1.1 provides for mandatory uninsured motorist coverage in any policy written as follows:
a) an amount or limit of $15,000.00, exclusive of interest and costs, on account of injury to, or death of, one person in any one accident, and
b) an amount or limit, subject to such a limit for any one person so injured or killed, of $30,000.00, exclusive of interest and costs, on account of injury to or death of more than one person, in any one accident. * * *
The statute does not provide for the set-off provision approved by the Commissioner of Insurance; however the Commissioner has not to date withdrawn approval of this endorsement, or deleted or changed in any other way this particular clause. It must be presumed, therefore, that he does not consider the endorsement, including this set-off clause, *415 unfair or inequitable, or against public policy. Hartford Ins. Co. v. Allstate, 127 N.J. Super. 460 (App. Div. 1974), aff'd 68 N.J. 430 (1975); Jones v. Heymann, 127 N.J. Super. 542 (App. Div. 1974).
Plaintiff argues it is conceivable that the set-off provision could reduce the amount of uninsured motorist coverage to virtually nothing.[3] Defendant answers this argument by stating that the small premium paid for the coverage reflected the set-off provision, and the policy clearly stated this fact.
It is true that in every case where a claim against uninsured motorist coverage is made there must also have been PIP benefits paid, and the effect is to reduce the amount recoverable exclusively from uninsured motorist coverage. Motor Club of America Ins. Co. v. Phillips, supra, points out that in enacting mandatory uninsured motorists coverage, the Legislature must "have contemplated, when commanding an offer of [uninsured motorist] protection to `the insured' in every liability policy issued, that an injured person might have [uninsured motorist] recourse on more than one policy." 66 N.J. at 292. This is different from the question of whether the Legislature contemplated a merging of two required aspects of coverage within one policy. They did consider such an idea as evidenced from a reading of the Automobile Insurance Report, supra. In recommending an upward revision of uninsured motorist coverage, the Study Commission (at xvi) gives as the purpose: "A compulsory PIP coverage (no-fault) and liability insurance program together with an expanded Unsatisfied Claim and Judgment Fund should assure all New Jersey citizens of comprehensive injury reparation for accidents occurring in New Jersey."
We likewise find the other cases cited by plaintiff as inapplicable to this case because they all involve "other" policies *416 and endorsements, and the relationship between several policies. The issue before us concerns related provisions within one policy and a premium for each part of that policy at least partially controlled by that interrelationship. Plaintiff was duly advised that an adjustment of the cost of coverage was due to the set-off provision. As Couch on Insurance, 2d § 82.1:11 at 1076 points out: "The fact that an uninsured motorist statute requires minimum protection does not prevent motorists from obtaining, or companies from issuing an uninsured motorist protection in excess of the minimum monetary requirement of the statute." Plaintiff had the option of requesting additional uninsured motorist coverage to protect himself against such an off-set, and paying an additional premium for such coverage, but he made no such request. Therefore, he must be held to the clear and unambiguous terms of his contract.
Additionally, the court feels the public policy of our State will best be served by such a result. One of the primary objectives in instituting a no-fault coverage program while making the uninsured motorist coverage mandatory was to lower the total premium on an average automobile policy. The Senate Joint Resolution creating the Automobile Insurance Study Commission cited among its reasons:
* * * WHEREAS, The cost of automobile insurance has undergone a substantial increase; and
WHEREAS, Many persons are faced with the prospect of exposure to serious liability or economic hardship because of the fact that automobile insurance companies will not provide automobile insurance at a cost within their means and in some cases will not provide insurance at all....
[Joint Resolution No. 4 Laws of 1970, Approved June 18, 1970]
The goal of adequate compensation of accident victims has been more closely achieved since these statutes have become part of our law, but we must not forget the other goals of this legislation. The statutory mandate providing a certain minimum amount of protection to the public has *417 been achieved. Although a premium was paid for both types of coverage in issue in this case, the premium for uninsured motorist coverage was minimal because of the set-off provision and the policy clearly so stated. The expectations of the parties are reflected in this premium amount. The public policy of our State will be ill-served by allowing plaintiff to collect from a larger coverage than he and his family actually purchased under a theory of recovery which must necessarily cause an increase in everyone's insurance premiums. Anyone who wishes more extensive uninsured motorist coverage is free to obtain same by paying the increase premium, but the public remains free to choose the minimum insurance required by our law. This court holds the set-off provision a valid contractual expression within our State's public policy.
NOTES
[1] The language of item three of the amended additional PIP endorsement (limiting survivor benefits) cannot be considered part of the policy in question. Plaintiff's policy was issued on January 29, 1973, the amendment was first effective in May 1, 1973 and there was no subsequent modification of plaintiff's policy. Therefore, the court does not reach the issue of whether item three is in contravention of the statute.
[2] It is conceivable that the husband could be operating one vehicle with multiple passengers therein, his wife operating the second vehicle with multiple passengers therein, and all the passengers in both vehicles are covered under the uninsured motorist provision.
[3] For example, if an insurance company paid upon the death of an insured a $10,000 "added death benefit" plus $5,200 basic PIP income continuation, then there would be a $15,200 set-off against $15,000 of coverage.