MILTON J. MUSCHETTE, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF ROSE LEE MUSCHETTE, DECEASED, PLAINTIFF-RESPONDENT, v. THE GATEWAY INSURANCE CO., AN INSURANCE COMPANY DOING BUSINESS IN THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.

Argued January 24, 1978—Decided June 5, 1978.

*Mr. Robert A. Vort* argued the cause for defendant-appellant.

*Mr. Gerald M. Eisenstat* argued the cause for plaintiff-respondent (*Messrs. Shapiro, Eisenstat, Capizola, O'Neill & Gabage,* attorneys; *Mr. Mitchell S. Berman,* on the brief).

PER CURIAM. The Appellate Division affirmed a judgment of the Superior Court, Law Division, awarding plaintiff certain "survivor benefits" pursuant to section *N. J. S. A.* 39:6A–10 of the Automobile Reparation Reform ("no fault") Act, *N. J. S. A.* 39:6A–1 *et seq.,* together with 10% interest, but without counsel fee. We granted certification on defendant's petition challenging the substantive determination of the Appellate Division and the allowance of 10% interest on the judgment, 75 *N. J.* 27 (1977), but we denied plaintiff's cross-petition complaining of the disallowance of counsel fee.

We affirm essentially on the opinion of the Appellate Division, but subject to the added comments which follow. See also *General Accident Group v. Shimp,* 147 *N. J. Super.* 404, 411 (Law Div. 1977).

Defendant has never flatly contended that the purchase by plaintiff of Option 5 of the Commissioner's regulation concerning "additional personal injury protection" did not entitle plaintiff, as survivor of the decedent wife (also an additional named assured), to a potential recovery of the maximum benefits provided for under the Option 5 table both for income continuation benefits and essential service benefits. Its only argument in that regard has been that the plaintiff must "prove" his "actual" income continuation and essential service losses beyond the date of the death of the income producer (or essential service provider), and in excess of the basic maximums for those benefits of $5200 and $4380, respectively, up to the potential respective

maximums under Option 5 of $36,400 and $10,220.[1] However, as pertinently pointed out by the Appellate Division, "in case of death it is difficult or impossible to predict the amount of income and services which are lost to the surviving spouse or children or decedent's estate." 149 *N. J. Super.* at 94. Defendant fails to provide an explanation or illus-

---

[1] The departmental regulation for additional personal injury protection sets forth an "Appendix A" containing a schedule of the benefits. The explanatory note states that "only five weekly indemnity schedules are shown, with a two-year benefit duration." Appendix A is as follows:

**APPENDIX A**
**ADDITIONAL PERSONAL INJURY PROTECTION**

| | Maximum Additional Weekly Loss of Income Benefit | | | Maximum Additional Essential Services | | | |
|---|---|---|---|---|---|---|---|
| | During Period of Basic Benefits Payments (a) | After Period of Basic Benefits Payments (b) | Total Maximum Income Benefits | During Basic Payments | After Basic Payments | Total Max. E. Serv. | Death Benefits (c) |
| 1. | $0 | $100 | $5,200 | $0 | $12 | $4,380 | $10,000 |
| 2. | 25 | 125 | 7,800 | 8 | 20 | 10,220 | 10,000 |
| 3. | 75 | 175 | 13,000 | 8 | 20 | 10,220 | 10,000 |
| 4. | 150 | 250 | 20,800 | 8 | 20 | 10,220 | 10,000 |
| 5. | 300 | 400 | 36,400 | 8 | 20 | 10,220 | 10,000 |

Although plaintiff has never claimed more than a maximum of $36,400 for loss of income benefits or a maximum of $10,220 for essential service benefits, it would appear to us that Appendix A can logically be construed to afford a qualified claimant under Option 5 those amounts as "additional" benefits on top of the basic benefit maximums allowed by Section 4 of the act, *i. e.* $5200 for income benefits and $4380 for essential service benefits, or total maximums of $41,600 and $14,600 respectively. See *General Accident Group v. Shimp, supra,* 147 *N. J. Super.* at 406, 411.

We do not here resolve the matter definitively as plaintiff has never made the point and has not cross-appealed from the judgment in that regard. Nor has defendant been placed on notice that this issue might be raised. We reserve it for a case which will present the question. Nevertheless, and without prejudice to any objection which defendant may wish to address thereto, plaintiff may, pursuant to *R.* 4:50–1, seek appropriate relief from the trial court as to the amount due on the policy.

tration of how, under its rationale of Section 10, a survivor would ever be able to "prove" his loss in respect of either income continuation or essential services, even where the decedent was at the time of death an income producer or a provider of essential services or both.

In effect, therefore, defendant's argument entails the consequence that the "suitable *additional* first-party coverage for * * * survivor benefits * * *" (emphasis added) required under Section 10 to be made available by insurers to policyholders is illusory, as surviving insureds would never be entitled to recover more than the basic benefits provided for in *N. J. S. A.* 39:6A–4. We agree with the Appellate Division that this cannot have been the legislative intent, fairly reading Sections 4 and 10 together.

■ Next we consider defendant's contention, raised for the first time at the oral argument before this Court, that if plaintiff is to be awarded maximum scheduled survivor benefits of $36,400 and $10,220 under Option 5, he should not also be allowed the $10,000 death benefit also provided for under the Commissioner's regulation (where death occurs within 90 days from the date of accident). The argument is that under the Appellate Division interpretation of Section 10 the additional survivor benefits for income continuation and essential services losses become, in effect, a death benefit or a form of life insurance. Since the $10,000 death benefit was intended to provide that kind of benefit, it becomes an unwarranted duplicate of the kind of benefit the Appellate Division has adjudicated in relation to Section 10.

We cannot accept the contention. The provision for the $10,000 death benefit in the Commissioner's regulation is absolute and unconditional. Moreover, it was included in the insurance policy purchased by the insureds. They received a certificate of insurance expressly alluding to inclusion of Option 5 benefits which concededly included the death benefit. In addition, as noted, the death benefit is payable only if, as here, decedent died within 90 days of the accident. It is

thus not true. that the death benefit is the same kind of benefit as the additional survivor benefits for income continuation and essential services loss.

We note, finally, that defendant has not argued that insureds are not entitled to survivor benefits in a lump sum but only in weekly installments. This may be because by the time judgment was entered in the trial court the two year period for payment of additional survivor benefits under Option 5 had elapsed. It is clear that income continuation and essential services benefits are payable weekly while the injured person is alive. *N. J. S. A.* 39:6A–4 b. and c. The point not having been argued, and the question being debatable, we need not and do not decide whether survivor benefits, either basic (Section 4d.) or additional (Section 10) are to be paid weekly or in a lump sum.

Judgment affirmed.

SCHREIBER, J., concurring. Rose Lee Muschette was killed in an automobile accident on July 12, 1973. At that time she and her husband Milton J. Muschette were insured by the defendant The Gateway Insurance Co. under its automobile policy for bodily injury and property damage liability. The policy also provided uninsured motorist coverage, personal injury protection, and additional personal injury protection. Plaintiff Milton J. Muschette, individually and as administrator of his wife's estate, brought this action to recover the additional personal injury protection benefits afforded by the policy. The trial judge awarded the plaintiff as additional personal injury benefits the maximum statutory amounts for income loss and loss of essential services under *N. J. S. A.* 39:6A–4 and –10, and a $10,000 death benefit. The Appellate Division affirmed. 149 *N. J. Super.* 89 (1977).

The defendant did not issue an insurance policy in its usual form. Instead it delivered to the insured, with an identification card reflecting that there was insurance coverage for the plaintiff's 1964 Chevrolet, an indorsement sheet which stated in part that insurance was afforded with re-

spect to those coverages indicated by a specific premium charge. Under coverages there was listed "Additional PIP (opt. #5)" and alongside that notation a reference to the premium charge of $9.00. "PIP" refers to personal injury protection coverage which is required irrespective of fault by *N. J. S. A.* 39:6A–4 and –10.

The main issues are what additional personal injury protection benefits were purchased by the insured and to what he is entitled. To ascertain the coverage afforded by the policy it is necessary to examine the underlying statute. The pertinent sections read as follows:

Every automobile liability insurance policy insuring an automobile as defined in this act against loss resulting from liability imposed by law for bodily injury, death and property damage sustained by any person arising out of ownership, operation, maintenance or use of an automobile shall provide additional coverage, as defined herein below, under provisions approved by the Commissioner of Insurance, for the payment of benefits without regard to negligence, liability or fault of any kind, to the named insured and members of his family residing in his household who sustained bodily injury as a result of an accident involving an automobile, to other persons sustaining bodily injury while occupying the automobile of the named insured or while using such automobile with the permission of the named insured and to pedestrians, sustaining bodily injury caused by the named insured's automobile or struck by an object propelled by or from such automobile. "Additional coverage" means and includes:

a. Medical expense benefits. Payment of all reasonable medical expenses incurred as a result of personal injury sustained in an automobile accident. In the event of death, payment shall be made to the estate of the decedent.

b. Income continuation benefits. The payment ot the loss of income of an income producer as a result of bodily injury disability, subject to a maximum weekly payment of $100.00, per week. Such sums shall be payable during the life of the injured person and shall be subject to an amount or limit of $5,200.00, on account of injury to any one person, in any one accident.

c. Essential services benefits. Payment of essential services benefits to an injured person shall be made in reimbursement of necessary and reasonable expenses incurred for such substitute essential services ordinarily performed by the injured person for himself, his

family and members of the family residing in the household, subject to an amount or limit of $12.00 per day. Such benefits shall be payable during the life of the injured person and shall be subject to an amount or limit of $4,380.00, on account of injury to any one person in any one accident.

d. Survivor benefits. In the event of the death of an income producer as a result of injuries sustained in an accident entitling such person to benefits under section 4 of this act,[1] the maximum amount of benefits which could have been paid to the income producer, but for his death, under section 4 b. shall be paid to the surviving spouse, or in the event there is no surviving spouse, then to the surviving children, and in the event there are no surviving spouse or surviving children, then to the estate of the income producer.

In the event of the death of one performing essential services as a result of injuries sustained in an accident entitling such person to benefits under section 4 c. of this act, the maximum amount of benefits which could have been paid such person, under section 4 c., shall be paid to the person incurring the expense of providing such essential services.

e. Funeral expenses benefits. All reasonable funeral, burial and cremation expenses, subject to a maximum benefit of $1,000.00, on account of the death to any one person in any one accident shall be payable to decedent's estate.[1] This section [*N. J. S. A.* 39:6A-4]

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

Insurers shall make available to the named insured covered under section 4,[1] suitable additional first-party coverage for income continuation benefits, essential services benefits, survivor benefits and funeral expense benefits. Income continuation in excess of that provided for in section 4 must be provided as an option by insurers to persons for disabilities, as long as the disability persists, up to an income level of $35,000.00 per year, with the excess between $5,200.00 and the amount of coverage contracted for to be written on the basis of 75% of said difference. The Commissioner of Insurance is hereby authorized and empowered to establish, by rule or regulations, the amounts and terms of income continuation insurance to be provided pursuant to this section.

[1]Section 39:6A-4. [*N. J. S. A.* 39:6A-10]

The Commissioner of Insurance has promulgated the following schedule of additional personal injury protection benefits:

Minimum schedule of additional personal injury protection

(a) Appendix A outlines the minimum schedule of "additional personal injury protection" coverage benefits that insurers must make available in accordance with Section 10 of the Act.

(b) In the Appendix A table, only five weekly indemnity schedules are shown, with a two-year benefit duration. It is believed that these ranges of benefits will meet the demand for this additional coverage in most cases.

(c) Consequently, at least for the initial period, it will be sufficient if your manuals exhibit these minimum benefit schedules with corresponding rates.

(d) However, benefits in excess of those set forth in Appendix A must be made available at the option of the named insured at reasonable intervals subject to the specific approval by the Commissioner, up to a maximum additional weekly loss of income benefit of $35,000 per year, as well as reasonable essential service benefits, survivor benefits and funeral expense benefits, as required by Section 10 of the Act.

## APPENDIX A
### ADDITIONAL PERSONAL INJURY PROTECTION

| | Maximum Additional Weekly Loss of Income Benefit | | | Maximum Additional Essential Services | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | During Period of Basic Benefits Payments (a) | After Period of Basic Benefits Payments (b) | Total Maximum Income Benefits | During Basic Payments | After Basic Payments | Total Max. E. Serv. | Death Benefits (c) |
| 1. | $0 | $100 | $5,200 | $0 | $12 | $4,380 | $10,000 |
| 2. | 25 | 125 | 7,800 | 8 | 20 | 10,220 | 10,000 |
| 3. | 75 | 175 | 13,000 | . 8 | 20 | 10,220 | 10,000 |
| 4. | 150 | 250 | 20,800 | 8 | 20 | 10,220 | 10,000 |
| 5. | 300 | 400 | 36,400 | 8 | 20 | 10,220 | 10,000 |

### NOTES TO TABLE

(a) Subject to 75 per cent of the amount of weekly income in excess of $100.00 per week.

(b) Subject to 75 per cent of the total weekly income.

(c) Death benefit shall be payable provided death occurs within 90 days from date of accident.

GENERAL: Above schedules applicable to named insured as defined; limits apply per person, per accident.

Broader forms of additional personal injury protection benefits are available on a "refer to company" basis.

Nothing herein is intended to prohibit the marketing of additional coverage on a per car basis.

[*N. J. A. C.* 11 :3-7.3]

The "opt. #5" in the Muschette policy refers to the tabulation next to numeral 5 in Appendix A of the above schedule. This tabulation prescribes a maximum additional weekly loss of income benefit during the period of basic benefits payments of $300 per week. As can be seen under *N. J. S. A.* 39:6A–4(b), basic income payments for loss of income are not to exceed $100 per week with a maximum of $5200. The additional coverage under option 5 of $300 would increase the weekly payments from $100 to $400 during the basic period. Furthermore, under that option, payments of $400 per week would continue after the basic period until the total aggregate additional income payments of $36,400 had been made. The total income payments which could be made therefore amount to $41,600.

Option 5 also increases the amount payable for essential services. Under *N. J. S. A.* 39:6A–4(c), reimbursement of necessary and reasonable expenses incurred for such services ordinarily performed by the injured person are limited to $12 per day and a maximum of $4380. Under option 5 the allowable daily maximum payment is increased by $8 to $20. After the time period during which the basic essential services may be reimbursed has elapsed, the allowable daily maximum rate is continued at $20 per day until the maximum additional essential services benefits of $10,220 have been expended. The total essential services benefits which could be made therefore amount to $14,600. See *General Accident Group v. Shimp,* 147 *N. J. Super.* 404, 411 (Law Div. 1977).

The last column in option 5 provides for a death benefit of $10,000, payable provided death occurs within 90 days from the date of the accident.

The insurance contract contemplates that the insured will be entitled to receive the loss of income benefits and the essential services benefits provided in *N. J. S. A.* 39:6A–4 as enlarged by option 5. I agree that, if the statutory conditions are satisfied, that is, the individual's income level and essential services expenses are at least equal to the statutorily

required amounts, the insurance carrier would be responsible for the aggregate maximum losses of income and essential services. Furthermore, under this insurance agreement the insurance company is also obligated to pay death benefits of $10,000 in the event that death occurs within 90 days from the date of the accident. This death benefit is prescribed independently of the maximum weekly loss of income benefit and maximum essential services. *M. Iavicoli, No Fault & Comparative Negligence in New Jersey* at 59 (1973).

Defendant has also questioned the propriety of the judgment having included interest at the rate of 10% per annum. The applicable statute, *N. J. S. A.* 39:6A-5(c), provides that "[a]ll overdue payments shall bear simple interest at the rate of 10% per annum." Defendant's reliance upon *N. J. S. A.* 59:9-2(a), which precludes interest prior to the entry of judgment against a public entity, is misplaced. That provision is a part of the New Jersey Tort Claims Act, *N. J. S. A.* 59:1-1 *et seq.*, and is not applicable to the instant contractual action.

I have hitherto pointed out that plaintiff is entitled to total income payments of $41,600, total essential services benefits of $14,600 and a death benefit of $10,000. However, the plaintiff sought $36,400 of income payments and $10,200 of essential service benefits. Judgment was entered in those amounts and the Appellate Division affirmed. No cross-appeal was filed in this Court. Accordingly, the judgment in favor of the plaintiff must be affirmed. It may be that plaintiff's calculation was due to a mistake or inadvertence in examining option 5 in the regulation promulgated by the Commissioner of Insurance. If so, he may seek appropriate relief from the trial court in accordance with *R.* 4:50-1.

I concur in the affirmance of the judgment.

Justice CLIFFORD joins in this opinion.

PASHMAN, J., concurring and dissenting. I concur in the result reached by the majority and in Justice Schreiber's reasoning with respect to the amount of PIP benefits prop-

erly due this plaintiff. Plainly, the basic PIP benefits and the additional PIP benefits for income continuation and essential services are to be cumulated. If they were not, there would be no reason for the amount of additional benefits payable to an injured insured during the period when basic benefits are payable to be reduced by the exact amount of the basic benefits. *See* Appendix A to *N. J. A. C.* 11:3–7.3, *ante* at 563 n. 1. The result can be no different in cases where the insured has died, and this coverage provides survivor benefits pursuant to *N. J. S. A.* 39:6A–4(d).

However, I part ways with my colleagues with respect to the proper disposition of this case in light of the obvious error in the calculation of the amount of benefits payable. Plaintiff sought to collect only the maximum additional PIP benefits under Option 5 as survivor benefits, apparently believing that the amount of the basic benefits was included therein, and obtained a judgment reflecting that demand. The defendant denied any obligation to pay any more than the amount of the maximum basic PIP benefits as survivor benefits, claiming that the additional PIP benefits were not recoverable as an element thereof. Defendant chose not to argue in the alternative that if the additional PIP benefits were so recoverable, the basic PIP benefits were to be included rather than added to the additional PIP benefits. In view of its total denial that the additional PIP benefits were recoverable at all, I fail to see how the defendant would be prejudiced against our correcting the judgment entered below to reflect the proper amount of survivor benefits to which plaintiff was entitled. The defendant chose to rely exclusively on the argument most favorable to its position. It cannot be heard to complain if, after finding that argument nonmeritorious, this Court, in the exercise of our original jurisdiction to make a complete determination of the appeal, *R.* 2:10–5, directs that the judgment entered be modified to reflect the correct amount due plaintiff in excess of the amount defendant claims is its only liability.

I find it inconceivable that this Court should sanction the injustice which results from the mere affirmance of a judgment in an amount erroneous as a matter of law. Plaintiff's mistake in demanding too little is readily understandable in view of the statutory and regulatory confusion on the point, not definitively settled until today. In such circumstances, the Court is penalizing the very plaintiff whose efforts at vindicating his rights will inure to the benefit of all insureds who purchase the additional PIP coverage. *Cf. Darrow v. Hanover Tp.,* 58 *N. J.* 410, 420 (1971); *Willis v. Dept. of Conservation,* 55 *N. J.* 534, 541 (1970). This is unfair.

CLIFFORD and SCHREIBER, JJ., concurring in the result.

*For affirmance*—Chief Justice HUGHES, Justices SULLIVAN, CLIFFORD, SCHREIBER and HANDLER and Judge CONFORD—6.

*For modification*—Justice PASHMAN—1.