709 A.2d 231

JOY ANN AQUILIO, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF JOHN AQUILIO JR., DECEASED, PLAINTIFF–RESPONDENT, v. CONTINENTAL INSURANCE CO. OF NEW JERSEY, DEFENDANT–APPELLANT,ROYAL INSURANCE COMPANY OF AMERICA AND ST. PAUL MERCURY INSURANCE COMPANY AND/OR THE ST. PAUL PROPERTY & LIABILITY INSURANCE CO., DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued February 3, 1998—Decided March 31, 1998.

Before Judges KEEFE, PAUL G. LEVY and WECKER.

*Daniel J. Pomeroy* argued the cause for appellant (*Mortenson and Pomeroy*, attorneys; *Mr. Pomeroy* and *Karen E. Heller* on the brief).

*Frederic J. Rossi* argued the cause for respondent (*Mr. Rossi* and *William R. Marth* on the brief).

The opinion of the court was delivered by

WECKER, J.A.D.

Defendant, Continental Insurance Company ("Continental"), appeals from the entry of summary judgment in favor of plaintiff, Joy Ann Aquilio (Aquilio), and the denial of its own motion for summary judgment. The parties dispute the amount of the total death benefit due plaintiff as the widow and Executrix of the Estate of John Aquilio, under the automobile insurance policy issued to plaintiff by Continental. As required by *N.J.S.A.* 39:6A–4d, prescribing mandatory personal injury protection (PIP) coverage, that policy provides death benefits consisting of the maximum income continuation benefits payable under *N.J.S.A.* 39:6A–4b plus the maximum essential services benefits payable under *N.J.S.A.* 39:6A–4c. Specifically, the question presented is whether the total death benefit provided in accordance with § 4d must be calculated based upon the minimum required PIP benefits set forth in § 4b and § 4c, as defendant claims, or based upon the optional additional benefits offered by defendant and purchased by plaintiff pursuant to *N.J.S.A.* 39:6A–10. Plaintiff claims she is entitled to a total death benefit calculated on the basis of the "Option 5" PIP benefits of $41,600 in income continuation plus $14,600 in essential benefits.

Defendant relies upon the 1982 amendment to *N.J.S.A.* 39:6A–10, which states that such additional "income continuation and essential services benefits shall cease upon the death of the claimant, and shall not operate to increase the amount of any death benefits payable under [*N.J.S.A.* 39:6A–4] ..." Relying on *Capelli v. Twin City Fire Ins. Co.*, 209 *N.J.Super.* 552, 508 *A.*2d 269 (App.Div.1986), the motion judge held that because Continen-

tal did not notify Aquilio of any change in the terms of her policy upon post–1982 policy renewals, the amendment did not effect any reduction in the death benefit. We agree that plaintiff was entitled to summary judgment, and we therefore affirm. However, we do so for reasons different from those stated in the Law Division Judge's letter opinion of April 3, 1997. *See Isko v. Livingston Tp. Planning Bd.*, 51 *N.J.* 162, 175, 238 *A.2d* 457 (1968) ("[i]t is a commonplace of appellate review that if the order of the lower tribunal is valid, the fact that it was predicated upon an incorrect basis will not stand in the way of its affirmance").

Aquilio's husband was a pedestrian when he was killed as a result of a freak accident on January 2, 1992. Two cars collided at an intersection, and one jumped the curb, striking him. He died almost immediately. At the time of the accident, Aquilio had three insurance policies which included PIP benefits. One of those policies was with Continental.[1] It is undisputed that John Aquilio was covered by plaintiff's policy as a resident spouse of the named insured, Joy Ann Aquilio.

Soon after her husband's death, Aquilio reported her claim to Continental. Continental Loss Adjusting Company responded by letter dated January 28, 1992, asking plaintiff for verification that she was the executrix of her husband's estate. After Aquilio requested confirmation of her coverage, she received a letter dated January 31, 1992, which listed her benefits pursuant to Option 5 coverage as follows:

| | |
|---|---|
| Death Benefits | $10,000 |
| Funeral Expenses | $ 2,000 |
| Essential Services | $14,600 |
| Lost Wages | $41,600 |

Aquilio then submitted her application for PIP coverage. Continental declined to pay the additional benefits under Option 5,

---

[1] The other two policies were issued by St. Paul Mercury Insurance Company ["St. Paul"] and Royal Insurance Company of America ["Royal"]. Those companies, named as defendants, did not participate in the cross-motions at the trial level and are not parties to this appeal.

contending that it was responsible only for the basic PIP coverage.[2] In denying the additional benefits, Continental relied on the above-quoted language added by the 1982 amendment to *N.J.S.A.* 39:6A–10.

Plaintiff filed suit. Continental answered and moved for summary judgment. Aquilio cross-moved for summary judgment, claiming that Continental issued her first policy in the 1970's, when she originally selected Option 5 benefits; that she continued to renew this same policy until her husband's death; and that she was never notified that a statutory amendment had changed her coverage.

The trial court denied Continental's motion for summary judgment and granted Aquilio's cross-motion for summary judgment from the bench on January 24, 1997:

> This Court, by a reading of the dec. sheet and in conjunction with the policy issue, taking into consideration the original policy was issued prior to N.J.S. 39:6A as amended on January 12th, 1982 that the insured's claim for additional coverage is supportive by a letter dated January 31st, 1992 from Continental Insurance, notwithstanding Continental's position that it was informative only.

In a letter opinion dated April 3, 1997, the motion judge reasoned:

> Plaintiff was never advised that subsequent policies, post-January 12, 1982, did not afford the additional P.I.P. coverage provided by Option. In fact, after giving notice of claim, plaintiff was advised that she had Option 5. There is no factual evidence plaintiff was advised that the coverage she had was modified by the provisions of *N.J.S.A.* 39:6A–10.

> . . . .

> There is nothing in the defendant's moving papers upon which this court can conclude that the insured as layperson could conclude that she no longer had P.I.P. benefits contracted for in previous renewal policies which provided loss of income and essential service in the event an insured was killed in an automobile accident.

---

[2] Prior to institution of this lawsuit, Continental issued a check in the total sum of $12,000 to Aquilio, apparently representing the undisputed $10,000 death benefit and $2,000 funeral expenses. Aquilio did not cash that check, however, because she did not know whether doing so would constitute a waiver. As of the date of the motion, the check was stale and Continental had not issued a replacement. Nor has it paid to Aquilio the basic PIP benefits, for which it admits responsibility.

More important, there is no evidence that she was advised of the loss of benefit. In fact, based upon what has been presented by the insured's certification of January 16, 1997, plaintiff had a reasonable expectation of receiving the full loss of income and essential benefits as provided by Option 5 in the amounts of $41,600.00 and $14,600.00, respectively.

The court ruled in favor of plaintiff, quoting *Capelli, supra*, 209 *N.J.Super.* at 555, 508 *A.*2d 269:

In the absence of an endorsement changing the terms of the policy issued to plaintiff's decedent, the amendment (*N.J.S.A.* 39:6A–10) did not operate to effect a change in the policy issued to the plaintiff's decedent.

The motion judge perceived the issue to be whether Aquilio had a reasonable expectation of recovering the maximum Option 5 benefits because Continental failed to inform her of the 1982 change in the law. We disagree that that is the issue presented.

Aquilio was insured by Continental beginning in 1970. The earliest Continental automobile policy in evidence was plaintiff's 1974 policy, which included basic death benefits as well as optional, additional PIP coverage under "Option 5." Defendant does not dispute the terms of the 1974 policy. Option 5 provided PIP benefits up to a maximum of $41,600 in "additional income continuation benefits" and $14,600 in "additional essential services benefits." Option 5 coverage also included an additional death benefit of $10,000 and funeral expenses of $2,000, and defendant does not dispute plaintiff's entitlement to those amounts. Aquilio maintains that the 1974 policy was renewed continuously until the time of her husband's death; that each year she received new declaration sheets; and that the terms of the policy remained unchanged. The eight optional, additional coverage levels offered by Continental pursuant to *N.J.S.A.* 39:6A–10 did not change between 1974 and 1991.

The declaration sheets for plaintiff's policy covering the period July 25, 1991, through January 25, 1992, and applicable on the date of John Aquilio's death, clearly state that it was a "renewal" policy and list Option 5 as the additional PIP benefits included in the policy. The declaration sheet explicitly references endorsement sheet "AUTO PAP–86 ATTACHED, ADDITIONAL PIP COV. . . . OPT 5." Defendant produced PAP–86 in the litigation,

although it was apparently not provided to plaintiff with the declaration sheets at the time of the renewal.

■ The record does not support the conclusion that plaintiff reasonably understood and anticipated that her policy included additional death benefits based upon the Option 5 additional income continuation and essential services benefits. Nor did plaintiff establish that she had such an expectation of a higher death benefit [3] prior to the triggering event—her husband's death. That, of course, is the only relevant time upon which to base a "reasonable expectation" argument. Nor do we accept the motion judge's reliance upon Continental's January 31, 1992, letter, either as an admission or as evidence that the maximum Option 5 benefits are due as a death benefit. We also reject the argument that Continental had a duty to advise plaintiff of the amendment to § 10, especially since more than fifteen years have now passed since the statute was amended.

■ The terms of the 1991–92 renewal policy, however, support the result reached by the Law Division Judge. Paragraph three of the 1991 Continental endorsement, PAP–86, which defendant claims as part of the applicable 1991–92 renewal policy, expressly states:

The limits of the Company's liability stated herein for income continuation benefits and essential service benefits *shall be used to calculate the amount of survivor benefits payable.*

[Emphasis added.]

---

[3] The 1974 "New Jersey Additional Personal Injury Protection Endorsement" provided the same Option 5 additional benefit limits as the 1991 endorsement. However, the terms of paragraph 3 of the 1974 additional benefits endorsement were materially different from paragraph 3 of the 1991 endorsement. The 1974 paragraph 3 read: "The limits of the Company's liability stated herein for *income continuation benefits* and *essential services benefits* shall not operate to increase the amount of any *survivor benefits* payable under the Basic Protection Endorsement." Based upon the 1974 endorsement, plaintiff thus would have had no reasonable expectation of receiving the additional amounts as survivor's benefits on account of her husband's death.

The "limits ... stated herein for income continuation benefits and essential services benefits" under Option 5 are $41,600 and $14,600 respectively. Paragraph four of the same endorsement states that "[t]he Company will pay an added death benefit of $10,000 to the surviving spouse[.]" The 1991 policy supplied by defendant [4] does not define the term "survivor benefits." However, the term "death benefit" [5] is defined in "Section I Basic Personal Injury Protection Coverage" as follows:

"death benefits" means the amount or amounts payable in the event of the death of an eligible injured person as determined in subdivision (1) or (2) hereof, as appropriate:

(1) if the eligible injured person was in income producer at the time of the accident, an amount equal to the difference between $5,200 and all basic income continuation benefits paid for any loss of income resulting from his injury prior to his death;

(2) if the eligible injured person ordinarily performed essential services for the care and maintenance of himself, his family of family household, an amount equal to the difference between $4,380 and all basic essential services benefits paid with respect to his injury prior to death.

Thus the term "survivor benefits" is clearly synonymous with "death benefit" in the policy at issue. Read together, the provisions of paragraphs three and four of endorsement PAP–86 can only mean that plaintiff is entitled to the $10,000 "added death benefit" plus the Option 5 "survivor benefits," the latter to be calculated by using the Option 5 benefit levels for which the

---

[4] It is often mechanically difficult to determine exactly what constitutes a complete insurance contract because a policy frequently consists of numerous sheets that are not consecutively numbered, many of which are endorsements that modify, reduce, or increase the coverage otherwise provided. It would be helpful if the insurance industry voluntarily, or the Department of Insurance by regulation, were to adopt a standard method of consecutive pagination of the complete policy issued to each insured.

[5] We note the Senate committee statement to the 1982 amendment, describing the amendments, *inter alia*, as

substitut[ing] the term "death benefit" for "survivor benefit," as "death benefit" is a more accurate description of the coverage provided under no fault than is the term "survivor benefit."

[Senate Labor, Industry and Professions Committee Statement to Assembly, No. 1853, *L.*1981, *c.* 533.].

parties contracted. The terms of the policy itself, and not plaintiff's subjective expectation, entitle her to the additional benefits she claims. Furthermore, if the juxtaposition of paragraphs three and four of the PIP endorsement create any ambiguity, that ambiguity must be resolved against the insurer. *See Salem Group v. Oliver*, 128 *N.J.* 1, 4, 607 *A.*2d 138 (1992); *Jeffer v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 306 *N.J.Super.* 82, 87, 703 *A.*2d 316 (App.Div.1997).

■ The only remaining question is whether Continental is prohibited from contracting to pay higher benefits than the statute requires, as defendant contends. Continental's brief states: "nor is this a case where a carrier has contracted to give more coverage than it is *required* to provide under State law. . . ." To the contrary, this is exactly such a case.

We conclude that Continental can and did write a policy giving its insured more protection than the statute requires. *See Williams v. American Home Assurance Co.*, 121 *N.J.Super.* 351, 356, 297 *A.*2d 193 (App.Div.1972):

> The trial judge correctly held that the carrier was bound by the terms of its contract despite the fact that coverage was provided therein greater than required by the statute. That determination is based upon the sound principle that a statute requiring an insurer to file a policy providing certain mandatory coverage should not have the effect of relieving the insurer of obligations it has expressly contracted for. *Cosmopolitan Mutual Ins. Co. v. Continental Cas. Co.*, 28 *N.J.* 554, 147 *A.*2d 529 (1959).

We do not read the statutory wording "shall cease" and "shall not operate" to make the sale of added benefits illegal, as defendant contends. The legislative history of the 1982 amendment to *N.J.S.A.* 39:6A–10 establishes an intention to limit the required death benefit to an amount calculated from the basic, and not the optional, additional income continuation and essential services benefits. *See* Senate Labor, Industry and Professions Committee Statement to Assembly, No. 1853–*L.*1981, *c.* 533. That statement reads, in pertinent part:

> The amendments provide that the optional income continuation benefits and essential services benefits would cease on the death of the claimant and would not operate to increase any basic death benefits provided for under section 4 of the no-

fault law. This clarification is necessary in light of a recent court decision, *Muschette v. Gateway Ins. Co.*, 76 *N.J.* 560, 388 *A.*2d 964 (1978).

In *Muschette*, the Supreme Court held that *N.J.S.A.* 39:6A–4 and *N.J.S.A.* 39:6A–10, read together, entitled the surviving spouse to the optional additional benefits as part of the total death benefit, without proving the amount of income and essential services the decedent would have provided had she lived. The insurance company never argued in *Muschette* that the additional benefits were not potentially available as a death benefit, but only that plaintiff had to prove the actual losses. The Court rejected defendant's contention because the optional additional benefits then would be "illusory [and that] cannot have been the legislative intent. . . ." *Id.* at 564, 388 *A.*2d 964. The Court also recognized a potential argument, not raised in that case, that the optional additional benefit amounts would be due as a death benefit in addition to the basic § 4 benefits. *Id.* at 563 n. 1, 388 *A.*2d 964.

We should not attempt to infer legislative intent where the statutory language is clear. *See Chase Manhattan Bank v. Josephson*, 135 *N.J.* 209, 225, 638 *A.*2d 1301 (1994); *Mansion Supply Co., Inc. v. Bapat*, 305 *N.J.Super.* 313, 316, 702 *A.*2d 509 (App.Div. 1997). The 1982 amendment added the following language to *N.J.S.A.* 39:6A–10:

[I]ncome continuation and essential services benefits shall cease upon the death of the claimant, and shall not operate to increase the amount of any death benefits payable under section 4 of P.L.1972, c. 70 (C. 39:6A–4).

The amended § 10 does not prohibit the carrier from providing a higher death benefit calculated from the optional additional coverages as defendant contends. We can find no rationale for concluding that the Legislature prohibited or intended to prohibit an insurer from contracting for greater benefits. The first clause added by the amendment allows the carrier to provide that income continuation and essential services benefits "shall cease" at the death of the covered person, thereby avoiding a duplication or doubling of the death benefit. The second added clause allows the carrier to limit the total death benefit under § 4d to the basic levels derived from § 4b and § 4c. Whether intentionally or through inadvertence, defendant did not so limit the death benefit.

Defendant was certainly aware of the 1982 amendment for nine years before issuing plaintiff's 1991 renewal policy. Having failed to redraft its additional PIP endorsement to limit the total death benefit, defendant is bound by the terms of its own policy.

We affirm the order of January 24, 1997, denying Continental's motion for summary judgment. With one modification, we affirm the order of April 3, 1997, awarding judgment to plaintiff. The April 3 order requires Continental to pay the death benefit, funeral expenses, essential services and income continuation to the estate. Neither the parties nor the motion judge addressed the question whether the total "death benefit" due under § 4, and calculated under § 10, was actually due to the estate or to plaintiff individually. We note, however, that § 4d expressly provides that the total death benefit (including income continuation and essential services) "shall be paid to the surviving spouse...." We therefore exercise our original jurisdiction pursuant to *R.* 2:10–5 to modify the order of April 3 to provide that the entire death benefit (but not the funeral expenses) be paid to plaintiff individually, and not as executrix of the estate.

Except as so modified, we affirm and remand to the Law Division for entry of a modified judgment consistent herewith.