Lacko v. Washington National Ins. Co., Appellant.

Argued September 27, 1934.

Before KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Elverton H. Wicks,* for appellant.

*R. E. Anderson,* and with him *John B. McAdoo,* for appellee.

OPINION BY STADTFELD, J., November 22, 1934:

This was an action of assumpsit on a combination health and accident policy for health benefits amounting to $600.

Plaintiff's second amended statement averred, inter alia, the issuing on April 15, 1931, to plaintiff, of the policy in suit; that premiums were paid, $5.20 on April 8, 1931, $5.20 on May 5, 1931, and $5.20 on May 29, 1931; that payments were made after May 29, 1931, but were subsequently returned to the insured; that plaintiff, between May 19, 1931, and June 26, 1931,

developed or contracted tuberculosis, that he has been totally and continuously disabled from performing any work, and is under the care, and attendance once in every seven days, of a legally qualified physician; that the disability began May 19, 1931, and has continued to the present time; that he has been confined since August 1, 1931, by reason of said sickness, in the Tuberculosis League Hospital at Pittsburgh; that, on May 20, through his brother, and on or about May 27, and on or about June 7, through his father, plaintiff gave verbal notice to the manager of defendant's office at Pittsburgh of the said sickness; that the said manager notified plaintiff that the company was under no liability to pay the indemnity contracted for, by reason of the fact that the defendant company believes the illness had been contracted within thirty days after April 15, 1931, and that it relied upon Paragraph "H" in the policy providing that the sickness must be contracted after thirty days from the date thereof; that plaintiff claimed the sum of $600, being the confining illness indemnity for the six months beginning May 19, 1931, and the further sum of $200 indemnity under the double hospital indemnity provided in Paragraph "L" of the policy.

The following are excerpts from the policy, material to the issues involved:

"Confining Illness Indemnity.

"(H) At the rate of one hundred dollars per month for the number of consecutive days, and not exceeding six months, that the insured is necessarily, totally and continuously confined within the house and is under the care of and visited in the house at least once in each seven days by a legally qualified physician by reason of sickness or disease that is not venereal in character and is contracted and begins during the life of this policy and after thirty days from date hereof.

&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

## Standard Provisions.

\*  \*  \*  \*  \* · \*  \*  \*

3.  If default be made in the payment of the agreed premium for this policy, the subsequent acceptance of a premium by the company, or by any of its duly authorized agents shall reinstate the policy but only to cover accidental injury thereafter sustained and such sickness as may begin more than ten days after the date of such acceptance.

\*  \*  \*  \*  \*  \*  \*  \*,,

The affidavit of defense admitted the issuing of the policy; averred that the payment of premium under date of May 29, 1931, $5.20, was rejected by the company and returned to plaintiff; denied that plaintiff contracted tuberculosis between May 19, 1931, and June 26, 1931, and averred that plaintiff contracted the same a considerable length of time prior to May 19, 1931; admits that, by reason of said illness, plaintiff has been disabled and is under the care of a legally qualified physician, but denies that said disability began on May 19, 1931, and avers that it began at a date prior thereto; admits the confinement in the hospital; admits receipt of notice of the alleged illness, but not of the illness for which claim is made. Defendant further avers that, by reason of the fact that the premium for the month of May was not paid until May 5th, the first effective date after May 1st when the policy came into force and effect, placing any liability on the defendant, was full ten days beyond May 5th, or May 16th; that defendant was sick with tuberculosis prior to May 15, 1931; that, on May 15, 1931, plaintiff consulted his physician, Dr. Campbell, and that at that time he had a fever—pain—cough—chills and bloody sputum, and that said physician prescribed for him at that time; that said tuberculosis had been contracted by plaintiff a period of several weeks and perhaps months prior thereto, and that plaintiff was

suffering from said tuberculosis at and prior to May 5, 1931, and that, therefore, defendant is not liable under said policy by reason of "Standard Provision No. 3."

The case came on for trial before a court and a jury. The claim for $200 double hospital indemnity was abandoned at the trial.

The facts are undisputed that about May 15th the plaintiff consulted his family physician complaining of general disability and the fact that he was "catching cold." He was ordered by his physician to return home, to rest, and to take a prescription which was given him, and, if he did not feel better within a few days, to call the doctor. The plaintiff did not carry out the instructions given by his physician but returned to work. On May 19, 1931, he was taken home from his work after a collapse at work, placed in bed, and his case diagnosed by the physician immediately called as lobar pneumonia. In the course of the treatment for lobar pneumonia, another physician was called who indicated that he believed the pneumonia to be tubercular in character. After convalescence from pneumonia his family physician caused sputum examinations to be made and then diagnosed his continued condition as one of tuberculosis.

Plaintiff, on his own behalf, testified that he had not been sick prior to May 15th, and that he did not have a cough prior to said date, and not between April 15th, the date of the policy, and May 1st, and that he was well until May 19th.

Dr. Robert A. Campbell, a witness on behalf of plaintiff, and who had been practising about forty years, testified that he had been the family physician for a good many years, that plaintiff came to his office on May 15th and was examined by him; that he thought he might have a slight attack of grippe; that he did not seem to be very sick at all; that the lobar

pneumonia which he diagnosed on May 19th ran its regular course; that on May 15th there was "nothing you would suppose or cause you to suspect that there was any tuberculosis there;" the first time he suspected that plaintiff might have secondary infection of tuberculosis was after the 19th, "during his pneumonia attack on account of spitting of large quantity of blood different times. We then commenced to think there was possibility;" but "Not positively, until he was, however, over the pneumonia, until after I had the sputum examined," well on in June; that you cannot be sure there is tuberculosis until the sputum test is taken; that pneumonia may so damage the lung that tuberculosis may show up or appear; that is what he thought occurred in this case.

Dr. George E. Martin, assistant physician in charge of Tuberculosis League Hospital, where plaintiff was and had been a tubercular patient since July 15, 1931, a witness on behalf of defendant, produced in court the history of plaintiff's illness, showing that plaintiff had a cough as early as May 1, 1931, for which he had been treated for bronchitis, and on May 19, 1931, plaintiff expectorated a large mouthful of blood; was diagnosed as pneumonia on that day; on May 21st, he had another hemorrhage; that he could not say surely when plaintiff contracted tuberculosis; that "tuberculosis had no definite incubation period," and for that reason could not give a definite answer; "the only thing is that starting with this history of the cough all during May, I think it would be reasonable to think he might have had bronchitis, but, however, even to say what the real diagnosis was, it is probable that was the beginning of the tuberculosis at that time." "Q. Well, is there any proof it was prior to May 20th when you say you knew he positively did have tuberculosis, basing your answer on what I read to you of the statement of Dr. Saska? A. No, I don't think I can say

any number of days there. ...... A. State whether or not you could say definitely if he had tuberculosis one week prior to the condition which I have read to you? A. Well, the duration of that pneumonia—that probably was tuberculosis pneumonia, although there would be no way of knowing it until the sputum was examined. When Dr. Saska found positive sputum, that then pneumonia probably was tuberculosis pneumonia. Q. How many days prior to that inspection would tuberculosis be present? A. I could not say, sir. It may have been there latent for a long time, or he may have had a prolonged infection down to the pneumonia, and the result right away. There could not be any definite time there that I know. ....... By the Court. Q. I mean, do you say that the cough would be the beginning of the tuberculosis or you just now think it would be? A. Just think it would be—it would be reasonable to suppose it was."

Dr. August Saska, called on behalf of defendant, a practising physician of seventeen years experience, who devoted a great deal of his time to tuberculosis, testified that he examined plaintiff on May 20, 1931, at the request of Dr. Campbell, also on May 25th and June 7th. He testified: "I diagnosed it as an acute form of tuberculosis, which we call pneumonic form. Now, tuberculosis starts in different forms. It may start as a chronic form from an ordinary cough, which is first a cough, or it may start as pneumonia, or it may start as a hemorrhage. That is, I diagnosed his as pneumonic, form of tuberculosis, which resembles pneumonia. Q. Taking into consideration these examinations you made, and the condition you found on May 20th, how long prior to that time would you say he had tuberculosis? A. I do not know. The acute form which I diagnosed I think was only a day old."

Under this testimony there arose a clear question of fact which was submitted to the jury in a fair and

comprehensive charge. A request for binding instructions was refused. The question was strictly limited to whether or not the tuberculosis had its inception prior to midnight of May 15, 1931, the day upon which the policy again became effective after its restoration by payment of the premium on May 5, 1931, under Paragraph 3 of the Standard Provisions. The jury found in favor of plaintiff. A motion for judgment non obstante veredicto was overruled in an opinion by SMITH, J. We see no error in the disposition of the case by the lower court.

The assignment of error is overruled and judgment affirmed.