William C. HOLT, Appellant,

v.

GEORGE WASHINGTON LIFE INSUR-
ANCE COMPANY, Appellee.

No. 1789.

Municipal Court of Appeals for the
District of Columbia.

Submitted May 7, 1956.

Decided June 18, 1956.

Rehearing Denied July 2, 1956.

John McDaniel, Washington, D. C., for
appellant.

Laidler B. Mackall, Washington, D. C., for appellee.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

ROVER, Chief Judge.

Holt was the holder of a Hospital and Surgical Expense Policy and a Medical Care Policy, issued by the insurance company on February 8, 1954; he was treated by a physician for a duodenal ulcer in September 1954, while admittedly the policies were in force and certain policy benefits were paid to him by the company for that illness. In July 1955 he was operated on and the ulcer was removed.

The premiums on these policies were paid monthly; there is no dispute that they were duly paid to and including the month of March 1955; there is controversy as to whether the April 1955 premiums were paid within the time limit fixed by the policies. Holt contends that they were paid; the company disputes this.

If payment was proven he is entitled to recover; if as the company contends the policies lapsed, although thereafter reinstated, there comes into play the provisions of Item 3 of the "Standard Provisions" of both policies reading:

"3. If default be made in the payment of the agreed premium for this policy, the subsequent acceptance of a premium by the Company or by any of its duly authorized agents shall reinstate the policy but only to cover accidental injury thereafter sustained and such sickness *as may begin more than ten days after the date of such acceptance.*" [Emphasis supplied.]

The trial court entered judgment for the company and Holt appeals.

We are confronted with two questions: (1) were the April premiums paid within the grace period allowed by the policies, and (2) if not, was the illness compensable under the provisions of the policies?

Holt and his wife testified that on or about April 4, 1955, the premiums were paid by check; they introduced a check stub book indicating that a check was drawn on April 4, 1955, payable to the company for the amount of the premiums and evidence was adduced to the effect that the check was mailed within time to the company; the record discloses that no check corresponding to the stub entry ever reached the bank on which it was drawn and accordingly was never paid by the bank; that the company sent receipts for the other premiums paid but not for this one and cancelled checks showing payment of the other premiums were produced but not for the month in question; the company denied ever receiving the premiums in dispute; it had sent Holt a notice of the lapse of the policies because of the non-payment of the April premiums and advised him of their reinstatement in June 1955 after the premiums were paid up-to-date.

■ 1. As appears earlier in this opinion the evidence in connection with the payment of the April premiums was in conflict. There is, of course a presumption that a letter properly addressed, stamped, deposited in the mail has been received by the addressee;[1] however, this presumption is rebuttable.[2]

■ The evidence in this case in connection with this phase of the matter was in such conflict that either one of two different conclusions might reasonably have been drawn from it, and we have no right to substitute our findings for those of the trial court.[3]

1. Campbell v. Willis, 53 App.D.C. 296, 290 F. 271.

2. Farmers Ins. Exchange v. Taylor, 10 Cir., 193 F.2d 756.

3. Nolan v. Werth, 79 U.S.App.D.C. 33, 142 F.2d 9.

2. Plaintiff urges that the court should have ruled as a matter of law that plaintiff's sickness and disability were covered by the policies and with this we agree. While no cases have been found where the precise question presented by the facts here has been raised for judicial determination,[4] we think a fair construction of the policies in question favors a ruling for the insured.

Under both policies there is coverage where both the sickness and the hospital and medical expenses are incurred while the policy is in force. While it is true, as we said in George Washington Life Insurance Co. v. Morgan, D.C.Mun.App., 118 A.2d 685, 687, that any " * * * coverage for sickness originating while the policy is in force is limited by the reinstatement provision where there has been a subsequent lapse", there the disability for which the claim was made occurred within the ten-day period following reinstatement when the policy was not in force. In the present case, it is beyond dispute that the policy was in full force and effect both when the sickness originated and the resulting hospitalization began. The only question presented is whether under the language of Standard Provision No. 3 the insurer is liable where the sickness begins before the lapse and while the policy was in effect as distinguished from those cases where the sickness originated during the period of lapse and within ten days of reinstatement. Otherwise stated the question is whether an intervening lapse negates all liability of the insurer for sickness commencing before the lapse.

The insurance company would have us rule that plaintiff's sickness, a duodenal ulcer, diagnosed in September 1954 while the policies were in effect, began before the expiration of the ten-day period following the reinstatement in May 1955 and thus is not covered under the terms of Standard Provision No. 3 of either policy. But, to carry this position to its farthest extreme, once a lapse occurred the company would be absolved of all liability for all sickness originating anytime after the issuance of the policy and before the expiration of ten days following its reinstatement despite the fact that the sickness began when the policy was in full force and effect, that is, before the lapse. So long as the sickness could be traced to a time somewhere between the date of the policy's issuance and ten days after its reinstatement the lapse caused by the failure to pay a single premium would preclude the insured's recovery for any illness having its incipience prior to the lapse.

We do not regard Standard Provision No. 3 as placing such a broad limitation on the insurer's liability on reinstatement of the policies, and a plain reading of its language does not so indicate. It is true that the insurer's liability on reinstatement is limited to only " * * * such sickness as may begin more than ten days after the date of * * * " the acceptance of the premium reinstating the policy; but there is nothing in the language used which indicates that "begin" refers to those sicknesses which originated before the lapse and while the policy was in effect as well as those arising during the lapse, and ten days after reinstatement and in the absence of more explicit language we rule that it does not.

■ It is the established rule in this as well as most other jurisdictions that it is the insurer's duty " * * * to spell out in plainest terms—terms understandable to the man in the street—any exclusionary or delimiting policy provisions * * * ",[5] and

4. Cf., Mutual Benefit Health & Accident Ass'n v. Ryan, 55 Ariz. 57, 96 P.2d 749; Steele v. Commercial Acc. Ins. Co., 153 Minn. 429, 190 N.W. 611; Lacko v. Washington Nat. Ins. Co., 115 Pa.Super. 194, 175 A. 300; and Mutual Ben. Health & Accident Ass'n v. Ratcliffe, 163 Va. 325, 175 S.E. 870. In these cases, while certain phases of lapsation and reinstatement are discussed, they are distinguishable from the instant case.

5. Raley v. Life & Casualty Insurance Co. of Tenn., D.C.Mun.App., 117 A.2d 110, 113.

that the court will insist "* * * upon language which unambiguously conveys such an intent to the mind of an ordinary layman. Failing such unambiguous language, doubt should be resolved in favor of the insured." [6] As was said in the Buchanan case public policy dictates against permitting insurance companies to engage in "* * * obscurantism which conveys one meaning of their contracts to lawyers and another meaning to laymen."

■ Here the insurer had knowledge of plaintiff's condition as early as September 24, 1954, almost seven months before the policy lapsed; after the lapse it accepted his premiums and reinstated the policies. And now it attempts to avoid liability by contending that the word "begin" refers to any and all illnesses covered by the policy which arise from the time of the issuance of the policy until ten days after reinstatement. We do not think that such a limitation of the insurer's liability is so clearly stated and unambiguous as to preclude recovery, and where as here the policies were otherwise in effect both at the time the sickness was first diagnosed and when the hospitalization began, we must rule that plaintiff is entitled to recover.

Reversed, with instructions to enter judgment for the plaintiff.

6. Buchanan v. Massachusetts Protective Association, 96 U.S.App.D.C. 144, 223 F. 2d 609, 611. See also, Carter v. Provident Ins. Co., 74 App.D.C. 348, 122 F.2d 960.