**Thelma YAMAGUCHI, individually and as Personal Representative of the Estate of Stanley Yamaguchi, deceased, Robin Yamaguchi, minor, and Lynne Yamaguchi, minor, by Thelma Yamaguchi, their Guardian Prochein Ami, Plaintiffs,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois Corporation, Defendant.**

**Civ. No. 79–0083.**

United States District Court, D. Hawaii.

Dec. 23, 1980.

Raymond J. Tam, Roy K. S. Chang, Honolulu, Hawaii, for plaintiffs; Shim, Sigal, Tam & Naito, Honolulu, Hawaii, of counsel.

James Kawashima, Ronald Y. K. Leong, Honolulu, Hawaii, for defendant; Kobayashi, Watanabe, Sugita & Kawashima, Honolulu, Hawaii, of counsel.

DECISION ON PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANT'S CROSS–MOTION FOR PARTIAL SUMMARY JUDGMENT

KASHIWA, Judge.*

This is an action against an insurer to recover no-fault benefits under a Hawaii no-fault insurance policy. Plaintiffs have filed a motion for partial summary judgment and defendant has countered with its own motion for partial summary judgment. I hold in favor of plaintiffs on their motion for partial summary judgment for the amount indicated in the opinion to follow.

The undisputed material facts giving rise to this action are as follows:

1. On or about May 26, 1978, STANLEY YAMAGUCHI was a passenger in an automobile, a 1972 Dodge station wagon, involved in an accident on the Island and County of Hawaii, and died as a result thereof on May 26, 1978. The Dodge station wagon was driven by GARY YAMAGUCHI. The other car involved in the collision was a 1977 Ford pickup driven by one DAVID GOMES.

2. At the date and time of the accident, STANLEY YAMAGUCHI owned two cars, a 1971 Volkswagon and a 1970 Camero which were insured by STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, and said Hawaii no-fault automobile insurance policies were in full force and effect. True and correct copies of these policies, Nos. 145–635–E11–51A and 231–526–C23–51 are attached to the complaint filed by plaintiffs. The policies had aggregate no-fault benefit limits of $50,000.00 each. There were separate policies and separate premiums were paid on both.

3. At the time of the accident, STANLEY YAMAGUCHI was 44 years old and employed by United Airlines as an aircraft mechanic, earning approximately $2,854.00 per month.

4. The insurance policies issued by State Farm to MR. YAMAGUCHI provided in pertinent part:

*Judge of Court of Claims sitting by designation.

The company [State Farm] will pay, in accordance with the Hawaii no-fault law, no-fault benefits on account of *accidental harm* sustained by an eligible injured person and caused by an accident arising out of the operation, maintenance, or use of a motor vehicle as a vehicle.

\* \* \* \* \* \*

No-fault benefits shall consist of and be defined as:

. . . .

(c) Work Loss—Loss of monthly earnings resulting from the inability of the eligible injured person to engage in gainful activity or a decrease in earning capacity because of *accidental harm.*

\* \* \* \* \* \*

When used in reference to this coverage: *Accidental harm*—means bodily injury, *death*, sickness or disease caused by a motor vehicle accident to a person.

. . . .

Eligible injured person—means

(a) The named insured or any relative who sustains *accidental harm* arising out of the operation, maintenance use of, or while a pedestrian caused by, any motor vehicle . . . .

(Emphasis added.)

5. On or about June 27, 1978, Plaintiff THELMA YAMAGUCHI, surviving spouse of STANLEY YAMAGUCHI, filed a claim with State Farm for the full no-fault benefits payable under the policies. She sought the aggregate limit of $50,000.00 from each policy or $100,000.00 to recover earnings loss caused by the death of her husband. Despite repeated oral and written demands from Plaintiffs, State Farm has refused and still refuses to pay Plaintiffs no-fault benefits up to the aggregate no-fault limits of the policies.

6. On August 8, 1978, Plaintiff MRS. YAMAGUCHI received a check for $15,000.00 from National Union Fire Insurance Co., insurers of the vehicle in which STANLEY YAMAGUCHI was a passenger, to compensate for survivors' loss.

7. State Farm contends that it is not liable up to the aggregate no-fault limits for earnings loss caused by YAMAGUCHI's death, even though MR. YAMAGUCHI would have earned substantially more than the limits combined in his lifetime, had he not been killed. State Farm claims that Plaintiffs cannot recover no-fault benefits from more than one insurer.

8. Plaintiffs seek partial summary judgment against State Farm or $100,000.00, the combined aggregate $50,000.00 no-fault limits of the two State Farm policies, pursuant to Plaintiffs' complaint. Plaintiffs also seek reasonable attorneys' fees and costs of suit expended in making their claims herein, pursuant to Sections 294–30(a) and 294–4(3) of the Hawaii Revised Statutes and State Farm's policies. Plaintiffs further pray for interest at the rate of one and one-half percent per month on all unpaid no-fault benefits from November 20, 1978, pursuant to Section 294–4(2) of the Hawaii Revised Statutes.

With relation to plaintiffs' claim for reasonable attorneys' fees, costs of suit expended and interest, this court will reserve the question for a future date upon proper motion, supporting affidavits and other necessary proof.

The court will only concern itself for the present with plaintiffs' claim of $100,000.00 on the two policies.

I

HAWAII NO–FAULT STATUTE

■ Under the Hawaii no-fault law, Hawaii Rev.Stat. ch. 294 (1976 Replacement), every no-fault automobile insurance policy issued in Hawaii must provide coverage for certain "no-fault benefits." Hawaii Rev. Stat.Secs. 294–4 and 294–10. These "no-fault benefits" are defined by Hawaii Rev. Stat.Sec. 294–2(10) (Supp.1978) to include:

(c) Monthly earnings loss measured by an amount equal to the lesser of

(i) $800 per month, or

(ii) The monthly earnings for the period during which the *accidental harm* results in the inability to engage in available and appropriate gainful activity, or

(iii) A monthly amount equal to the amount, if any, by which the lesser of (i) or (ii) exceeds any lower monthly earnings of the person sustaining injury at the time he resumes gainful activity.

(Emphasis added.)

"Accidental harm" is statutorily defined as "bodily injury, *death*, sickness, or disease caused by a motor vehicle accident to a person." Hawaii Rev.Stat.Sec. 294–2(1) (1976 Replacement). (Emphasis added.)

"Injury" is also statutorily defined in this same section as "accidental harm not resulting in death." Hawaii Rev.Stat.Sec. 294–2(4) (1976 Replacement).

Hawaii Rev.Stat.Sec. 294–3(a) (1976 Replacement) provides that if an accident "causing *accidental harm* occurs in this State, every person, insured under this chapter, and his survivors, suffering from loss from *accidental harm* arising out of the operation, maintenance or use of a motor vehicle has a right to no-fault benefits." (Emphasis added.)

The insurer's obligation to pay no-fault benefits is detailed in Hawaii Rev.Stat.Sec. 294–4(1)(B) (Supp.1978), which states in pertinent part:

(B) In the case of death arising out of a motor vehicle accident of any person ... the insurer shall pay, without regard to fault, to the legal representative of such person, for the benefit of the surviving spouse and any dependent ... an amount equal to the no-fault benefits payable to such spouse and dependent as a result of the death of such person, *subject, however, to the provisions of section 292–2(10)* [the section which defines "no-fault benefits" and which is quoted in part above].

(Emphasis added.)

■ In short, coverage for "monthly earnings loss" is a basic no-fault benefit that must be included in any no-fault automobile policy issued in Hawaii. If the in-

sured dies as a result of the accident, the insurer must pay all amounts due under this coverage provision to the legal representative of the decedent, for the benefit of the surviving spouse and any dependents, "subject to" the provisions of Section 294–2(10). Under Section 294–2(10), the amount of earnings loss is measured by the period during which "accidental harm," *including death*, results in an inability to work, subject to a ceiling of $800.00 per month.

The Hawaii State Legislature, in enacting the Hawaii no-fault law, clearly intended to provide for reparations for loss of earnings caused by either non-fatal injury or death. As originally enacted, Sec. 294–2(10)(c) provided that monthly earnings loss should be measured by:

(i) [same as current section]

(ii) The monthly earnings for the period during which the *injury or death* results in the inability to engage in available and appropriate gainful activity, or

(iii) [same as current section]

Act 203, 1973 Hawaii Sess.Laws (emphasis added).

In 1974, the Legislature inserted the term "accidental harm" in place of the term "injury or death," wherever applicable in the statute. The Conference Committee report on the amendment stated that this was done for purposes of "clarity." S.Conf. Com.Rep. No. 28–74, Seventh State Leg., Reg.Sess. (1974), *reprinted in* 1974 Senate Journal at 776, 781–82 (1974). An earlier report by the Senate Consumer Protection Committee specifically stated: "This technical change clarifies the law to include coverage for deaths." S.Stand.Com.Rep. No. 467–74, Seventh State Leg., Reg.Sess. (1974), *reprinted in* 1974 Senate Journal at 940, 941 (1974). As noted, the term "accidental harm" includes "death" within its definition. Hawaii Rev.Stat.Sec. 294–2(1) (1976 Replacement).

It is significant to note that the Legislature drew a clear distinction between "accidental harm," which includes death, and "injury," which is defined by the no-fault law as "accidental harm not resulting in

death." Hawaii Rev.Stat.Sec. 294–2(4) (1976 Replacement). By using the term "accidental harm" rather than the term "injury" in the no-fault benefits provisions, the Legislature demonstrated its intention to include loss of earnings caused by death as a basic benefit in all Hawaii no-fault policies.

This is also made clear by the statutory definition of "monthly earnings," which is: "In the case of regularly employed person, one-twelfth of the average annual compensation before state and federal income taxes at the time of injury or *death* ...." Haw. Rev.Stat.Sec. 294–2(7)(A) (1976 Replacement) (emphasis added).

The regulations promulgated under the no-fault law by the State Motor Vehicle Insurance Division are even clearer in acknowledging that the earnings loss benefits include losses caused by the death of the insured. Since these rules and regulations are promulgated pursuant to statutory authority [Hawaii Rev.Stat.Sec. 294–37(2) (1976 Replacement)], they have the force and effect of law. *See Baldeviso v. Thompson*, 54 Haw. 125, 504 P.2d 1217 (1972); *State v. Kimball*, 54 Haw. 83, 503 P.2d 176 (1972).

Regulations Sec. 2–2 lists and defines the minimum required no-fault benefits—including earnings loss caused by accidental harm—in virtually the same manner as Hawaii Rev.Stat.Sec. 294–2(10). Regulations Sec. 2–4 expands on the statutory formula for computation of monthly earnings by providing in part:

In the case of a regularly employed or self-employed person, monthly earnings means one-twelfth of his average annual compensation or earnings before State and Federal income taxes for the 12 months next preceding the date of injury or *death* ... provided ... that if an eligible injured person or his *survivors* present sufficient credible evidence to show that such person's average annual compensation or earnings for the 12-month period from and after the date of accident would have been higher than the

pre-accident monthly earnings or his monthly earnings computed on the basis of his compensation at the time of the accident, then the same shall be increased accordingly . . . .

(Emphasis added.)

██ The specific use of the terms "death" and "survivors" indicates that the expected earnings of the insured which are lost because of his death are meant to be covered by the no-fault benefit provisions. Where, as in the instant case, this earnings loss caused by death undoubtedly would exceed the policy's aggregate no-fault limit, the decedent's legal representative is entitled to payment of the maximum amount recoverable under the policy for the benefit of the surviving spouse.

In short, the statute, regulations and the policy in the instant case clearly provide benefits for earnings loss caused by death.

In addition to the minimum no-fault benefits, this court considers it very significant and important that Hawaii automobile insurers are required by the Hawaii no-fault law to offer optional additional coverages. Hawaii Rev.Stat.Sec. 294–11 (1976 Replacement and Supp.1978) states in pertinent part:

(a) In addition to the no-fault coverage described in Section 294–10 every insurer issuing a no-fault policy shall make available to the insured the following optional insurance under the following conditions:

\* \* \* \* \* \*

(3) Additional coverages and benefits with respect to any injury, death, or any other loss from motor vehicle accidents or loss from operation of a motor vehicle . . .

In the instant case, STANLEY YAMAGUCHI contracted with STATE FARM for additional no-fault coverage. He purchased two insurance policies and paid premiums on both. Policy No. 231 526–C23–51 insured both he and his wife and covered his 1971 Volkswagon. Policy No. 145 635–E11–51A insured himself and covered his 1970 Camero. Both policies contained additional

coverage—designated "P5" by STATE FARM in its "6296K additional No-Fault Coverage Endorsement"—which raised the aggregate no-fault benefit limit from the statutory minimum $15,000 to $50,000, and increased the work loss maximum per month from the statutory minimum of $800 to $1,200.

Since the no-fault insurer is required to provide coverage for post-death earnings loss regardless of the option selected, this court finds that the fact that MR. YAMAGUCHI contracted for increased no-fault limits does not affect the right of his spouse to earnings loss recovery. It simply means that the amount of payable benefits has increased. Hawaii Rev.Stat.Sec. 294–3(c) (1976 Replacement), entitled "Maximum limit," merely establishes the total no-fault benefits payable under the *basic* no-fault benefits payable under the *basic* no-fault policy. Where the insured has contracted for expanded limits under a statutorily required option package, the maximum no-fault benefits clearly are increased. Otherwise, the additional coverage would be meaningless. Since the statute makes no distinction between the maximum benefits payable as a result of death or non-fatal injury, these expanded limits fully apply to losses caused by death of the insured.

██ In sum, it is well established that parties cannot contract for less protection than that afforded by statute, but can contract for more extensive protection. *E. g., Narus v. Pixley,* 88 Misc.2d 885, 886, 389 N.Y.S.2d 273, 274 (Sup.Ct.1976). I turn now to the actual contracts of insurance.

II

STATE FARM'S NO–FAULT POLICIES PROVIDE COVERAGE FOR EARNINGS LOSS CAUSED BY DEATH, UP TO THE POLICY'S AGGREGATE NO–FAULT LIMITS.

The no-fault policies issued by State Farm to STANLEY YAMAGUCHI provide in part:

The company [State Farm] will pay, in accordance with the Hawaii no-fault law,

no-fault benefits on account of *accidental harm* sustained by an eligible injured person and caused by an accident arising out of the operation, maintenance, or use of a motor vehicle as a vehicle.

\* \* \* \* \* \*

No-fault benefits shall consist of and be defined as:

. . . .

(c) Work Loss—Loss of monthly earnings resulting from the inability of the eligible injured person to engage in gainful activity or a decrease in earning capacity because of *accidental harm.*

The limits of liability for work loss benefits are stated as follows:

[T]he company's [State Farm's] liability, excluding attorneys' fees, for all no-fault benefits to or on behalf of any one eligible person who sustains *accidental harm* in any one motor vehicle accident shall be [$50,000 (by Additional No-Fault Coverage Endorsement)] in the aggregate. Subject to such aggregate limit:

(a) The maximum amount payable for work loss shall not exceed the lesser of

(1) [$1,200 (by Additional No-Fault Coverage Endorsement)] per month, or

(2) the monthly earnings for the period during which the *accidental harm* results in the inability of the eligible injured person to engage in available and appropriate gainful activity, reduced by the actual earnings of the eligible injured person for such month.

This monthly amount shall be prorated when the period of work loss is less than a month. (Emphasis added.)

No other limits on "work loss" appear in the policy.

The policies follow the statutory definition of "accidental harm," *i. e.,* "bodily injury, *death,* sickness, or disease caused by a motor vehicle accident. . . ."

It is significant to note that the policies, like the no-fault law, also contain a separate definition of the term "injury," which is defined as "accidental harm not resulting in death."

Thus, the policies, like the no-fault law, draw a distinction between "accidental harm" (including death) and "injury" (not including death). The use of the term "accidental harm" instead of "injury" in the work loss provisions are intended to cover earnings loss caused by the death of the insured. Indeed, as in the no-fault law, "monthly earnings" is defined as "in the case of a regularly employed person, one-twelfth of the average annual compensation before State and Federal taxes at the limit of injury or death . . . ." (emphasis added). The only limits on this earnings loss coverage are the $1,200-per-month ceiling and the aggregate policy limit of $50,000 for each policy.

In the instant case, it is clearly established that STANLEY YAMAGUCHI was 44 years old, gainfully employed, and earning approximately $2,854.00 per month when he died as a result of an automobile accident. His "accidental harm" resulted in a permanent "inability to engage in available and appropriate gainful activity." STANLEY YAMAGUCHI had a life expectancy in excess of 29 years at the date of his death. Hence, the amount of earnings loss caused by the "accidental harm" clearly would exceed the aggregate no-fault limits of State Farm's policies which total $100,-000, even if subject to the contracted $1,200 per month, the aggregate total of $100,000 would be exceeded in less than 7 years. Thus, Plaintiff THELMA YAMAGUCHI, as the duly appointed legal representative of STANLEY YAMAGUCHI, claims that she is entitled, pursuant to Hawaii Rev.Stat. Sec. 294–4(1)(B) (Supp.1978), to payment for earnings loss benefits up to the aggregate no-fault limits of the two policies. She alleges that the failure and refusal of State Farm to pay is in breach of the policy's express terms.

■ It is State Farm's position that it is not obligated to pay the aggregate no-fault benefits limit plaintiffs have already been paid $15,000 by National Union Fire Insurance Co., and according to Section 294–5,

Hawaii Revised Statutes, no person shall recover no-fault benefits from more than one insurer for accidental harm as a result of the same accident.

I find that Section 294–5 does not prohibit Plaintiffs from recovering the aggregate limits from both policies irregardless of whether they received the $15,000 benefits from National Union. The purpose of Section 294–5 was to describe the priority of payments between insurance companies and to prohibit injured persons from making double recoveries or from receiving duplicate benefits.

The $15,000 paid by National Union to MRS. YAMAGUCHI constituted payment for survivors' loss. Survivors' loss is different from and does not duplicate loss of earnings.

The policies issued by State Farm contain provisions for "survivors' loss," which is defined by the policy as follows: "No-Fault benefits payable as a result of the death of the eligible injured person for the *benefit of dependent survivors*. Such benefits may be paid immediately in a lump sum payment at the option of the beneficiary." (Emphasis added.) The policies place a $15,000 limit on this benefit.

The fact that the $15,000 "survivors' loss" benefit was paid by another insurance company, National Union, does not affect Plaintiffs' right to recover earnings loss benefits under the policies on behalf of MR. YAMAGUCHI's estate. There is no indication in either the Hawaii no-fault law, regulations, or the insurance policies that "survivors' loss" benefits are meant to preempt or reduce "work loss" benefits, or to duplicate "work loss" benefits.

State Farm's coverage limits for MR. YAMAGUCHI are outlined below:

Policy No. 231 526–C23–51

| | |
|---|---|
| Coverage designation | P5 |
| All no-fault benefits (aggregate limit) | $50,000 |
| Medical expenses and rehabilitation expenses subject to aggregate limit | |
| Work loss (Maximum monthly limit) | 1,200 |
| Substitute services expenses (Maximum monthly limit) | 800 |
| Survivors' loss | 15,000 |
| Funeral expenses | 1,500 |

Policy No. 145 635–E11–51A

| | |
|---|---|
| Coverage designation | P5 |
| All no-fault benefits (aggregate limit) | $50,000 |
| Medical expenses and rehabilitation expenses subject to aggregate limit | |
| Work loss (Maximum monthly limit) | 1,200 |
| Substitute services expenses (Maximum monthly limit) | 800 |
| Survivors' loss | 15,000 |
| Funeral expenses | 1,500 |

As demonstrated above, State Farm insured STANLEY YAMAGUCHI, in both policies, for both survivors' loss and for work loss. The $15,000 paid by National Union was for survivors' loss and if State Farm were to pay Plaintiffs the $15,000 again, that would duplicate no-fault benefits already paid by National Union and would be prohibited by statute. However, the payment by National Union does not cover work loss and loss of earnings benefits. Therefore, State Farm is still obligated by statute and by their insurance contracts with STANLEY YAMAGUCHI to pay loss of earnings benefits to the estate of STANLEY YAMAGUCHI up to the aggregate limits. The terms of the insurance contracts provide the following:

4. Non-Duplication of Benefits; Priority of Payments; Other Insurance. No eligible injured person shall recover duplicate benefits for the same elements of loss under this or any similar motor vehicle insurance, including self-insurance. Where two or more policies provide for the benefits payable hereunder, the policy describing the vehicle occupied by the injured person or if the injured person is a pedestrian, including a bicyclist, the policy on the vehicle which caused accidental harm to such pedestrian, including a bicyclist shall be primarily liable for the payment of benefits and no other policy shall apply, except that:

(a) such other policies shall apply as *excess to the extent their respective aggregate limits exceed those of the primary policy;*

(Emphasis added.)

Section 294–5 prohibits only the duplication of no-fault benefits. The payment of $15,000 by National Union compensated for survivors' loss but did not compensate for loss of earnings. Therefore, by statute, STANLEY YAMAGUCHI's estate is still entitled to recover for lost earnings. State Farm's insurance policies provide for both survivors' loss and for work loss. The policies also expressly provide that they shall be applied "as excess to the extent their respective aggregate limits exceed those of the primary policy." If the primary policy tendered by National Union only provided for $15,000 survivors' loss, State Farm would still be responsible for the excess up to the respective aggregate limits of $50,000 for each policy as provided for in the policies. Therefor, State Farm is obligated by statute and by contract to pay STANLEY YAMAGUCHI's estate the aggregate limits of the two policies.

In *Scherzi v. Allstate Insurance Company*, 60 A.D.2d 762, 400 N.Y.S.2d 408 (1977), plaintiff's infant daughter, a pedestrian, was seriously injured when struck by a motor vehicle. Her medical expenses incurred and predicted to be incurred were far in excess of $50,000. The insurance carrier of the owner and operator of the vehicle which struck plaintiff's daughter paid the maximum first-party benefits under its policy in the sum of $50,000. The court allowed plaintiff to recover additionally from his own insurance carrier, the sum of $50,000. Plaintiff had purchased from Allstate this additional personal injury protection for extended economic loss, and the court held that he was entitled to recover it.

A similar factual situation to this case occurred in *Heffner v. Allstate Ins. Co.*, 265 Pa.Super. 181, 401 A.2d 1160 (1979). In that case Mrs. Heffner's husband was fatally injured in an automobile accident. Allstate tendered only the survivors' loss benefit of $5,000 and the funeral expenses benefits as provided for under Pennsylvania's no-fault Motor Vehicle Insurance Act. Mrs. Heffner contended that she was additionally entitled to receive the No-Fault work loss

benefits her husband undisputably would have received had he been permanently injured, rather than killed, in the accident. The Superior Court of Pennsylvania agreed.

In reaching its decision, the Pennsylvania Court compared the tort liability system with the No-Fault Motor Vehicle Insurance Act. It was stated by the court that the objectives of the act were to be fair, comprehensive, and to achieve the maximum feasible restoration of all individuals injured and compensation of the economic losses of the survivors of all individuals killed on the highways. 265 Pa.Super. at 191–93, 401 A.2d at 1165–6.

The court specifically pointed out that "the effect of the threshold provisions of the No-Fault Act was the partial abolition of a cause of action for personal injuries, not the limitation of damages recoverable therefor." 265 Pa.Super. at 191, 401 A.2d at 1165.

In Pennsylvania, damages recoverable in survival actions include medical bills, victim's conscious pain and suffering, and his probable lifetime earnings. The proceeds of such an action would belong to the victim's estate and are disbursed to his heirs. In a wrongful death action, the damages include the present value of the services the victim would have rendered to his family had he lived, as well as his funeral expenses.

Allstate argued that they were only responsible for payment of survivors' loss benefit of $5,000 and funeral expense benefits according to Pennsylvania's No-fault Motor Vehicle Insurance Act.

The court had great difficulty with Allstate's argument and interpretation of the No-Fault Act as it denied the deceased victim's estate recovery for loss earnings, the deceased victim could have contributed to his estate had he survived. 265 Pa.Super. at 189, 401 A.2d at 1164.

The court therefore concluded that the plaintiff was entitled to recover work loss benefits as the survivor of a deceased victim under the No-Fault Motor Vehicle Insurance Act and under the contract of in-

surance with Allstate. 265 Pa.Super. at 193, 401 A.2d at 1166.

The law requires State Farm to provide additional coverage in the event of injury or death caused by a motor vehicle accident. (Section 294–11(a)(3)). When such option is purchased it allows for recovery beyond the maximum limit of $15,000 set forth in the statute. To hold otherwise would make the statutes inconsistent with each other. Second, the State Farm policy allows for excess coverage to the extent their respective aggregate limits exceed those of the primary policy. Certainly in this case the economic loss suffered far exceeds the $15,000 of the primary policy.

What State Farm's argument is saying is that if the insured dies all he gets is $15,000, no matter what his policy limits are or how many policies he has. Taking this argument one step further, if STANLEY YAMAGUCHI had not died but was permanently disabled and unable to work, State Farm would have been required to tender the aggregate limits of both policies so long as the earnings loss or medical expenses totaled over the limits of both policies. Simply stated, if you die, you lose out on everything, if you don't and you're totally disabled, you get everything. This result is not described anywhere in the Hawaii no-fault law nor in the policies issued by State Farm. It would be manifestly unfair for State Farm to charge additional premiums on insurance and not expressly inform their insureds that the additional coverage would apply only if you survived an accident and are disabled, and does not apply if you die right away. However, if you linger around for a while before dying, it does apply, but only to the extent of losses up until your death.

The Supreme Court of Delaware in *Ricks v. Coffelt,* 369 A.2d 680 (Del.1977), felt that there should be no difference in lost earnings whether the person died or survived the accident. In *Ricks* the plaintiff was the administratrix of the estate of Regina Burton who was killed in an automobile accident. The automobile in which Miss Burton was a passenger was insured by State Farm, the no-fault carrier. Plaintiff sought recovery of loss of future earning capacity on behalf of the estate. State Farm was the defendant, and argued that the no-fault statute referred to injured persons being able to recover loss of earnings, and not recovery for loss of future earning capacity. The Delaware Supreme Court in reviewing the no-fault statute found nothing in the language which limits recovery only to one who himself is injured, thereby precluding recovery by a personal representative. The court in quoting *Loden v. Getty Oil Company,* 359 A.2d 161 (Del.1976), stated:

"If one dies as a result of another's negligence, it is unreasonable to assume a legislative intent which would permit the tortfeasor, by the excessiveness of his own wrongful act, to escape the full measure of damages which would have been recoverable had the injured party lived. A rule of reason requires that the measure of damages recoverable by a decedent's personal representative be the same, basically, as if the injured party had survived."

369 A.2d at 681–2.

The court therefore held that loss of future earning capacity was a compensable item of damage and recoverable by a personal representative. 369 A.2d at 682.

I shall now examine the defense of "stacking" which State Farm strenuously argues. In the case before this court, STANLEY YAMAGUCHI contracted with State Farm for two automobile insurance policies to cover his two vehicles. He purchased additional aggregate no-fault benefit coverage of $50,000 in each policy and paid premiums on both policies. STANLEY YAMAGUCHI's loss of earnings in 7 years based upon the $1,200 per month limit would exceed the total of the two policies combined. State Farm argues that STANLEY YAMAGUCHI's estate is only entitled to recover on one of the two policies, but not on both, and that stacking of the two policies is not permitted. It must be pointed out in response to this argument that there exists no provision in the Hawaii no-

fault law or clause within State Farm's insurance policies issued to STANLEY YAMAGUCHI which prohibits the "stacking" of insurance policies. I find that the only prohibition exists relative to duplication of recovery. The $100,000 total loss earnings incurred by MR. YAMAGUCHI's estate does not constitute double recovery nor does it duplicate recovery from any other insurance company. The loss of earnings incurred by MR. YAMAGUCHI's estate far exceed the $100,000 combined aggregate no-fault benefit limits of MR. YAMAGUCHI's two insurance policies.

The Hawaii Supreme Court has not ruled on the question of stacking of insurance policies in no-fault cases, but the court has allowed stacking in uninsured motorist cases.

In *Walton v. State Farm Mutual Automobile Insurance Co.*, 55 Haw. 326, 518 P.2d 1399 (1974), plaintiff was seriously injured in an automobile accident while riding as a passenger. Plaintiff collected from the host driver's insurer the amount of $10,000, the maximum amount recoverable under the uninsured motorist provision of the driver's policy. Plaintiff then obtained a final judgment against the uninsured motorist for $25,000. No portion of the judgment was collected as the uninsured motorist filed a voluntary petition in bankruptcy. Plaintiff then sought to collect $10,000 from Defendant State Farm, his own insurer, which amount related to the uninsured motor vehicle coverage.

The Hawaii Supreme Court held that "pyramiding" or "stacking" of insurance policies was permissible, placing the emphasis on compensation for the injured party. The court stated:

*Compensation for the injured party* is the more important focus of inquiry. Therefore, there would be inequity only if insured tried to "pyramid" or "stack" several policy provisions to build up to a sum beyond his damage, and thus gain a windfall. But where the "pyramiding" or "stacking" would result in a sum equal to or less than insured's damage, to refuse to permit pyramiding would award the *insurer* the windfall, based on the none too compelling assumption that the uninsured would have only been insured to the statutory minimum. (emphasis in original)

55 Haw. at 332, 518 P.2d at 1403.

The Hawaii Supreme Court has also allowed stacking in the case where several uninsured motorist policies were applicable. In *Allstate Insurance Co. v. Morgan*, 59 Haw. 44, 575 P.2d 477 (1978), the court was faced with a situation in which three automobiles were insured under a single liability policy, but the insured was injured while operating a fourth, independently owned and insured motor vehicle which was struck by an uninsured motorist.

The question considered was whether the insured was limited under the single three-automobile liability policy to recover the uninsured motorist coverage on only one of the insured automobiles or is instead entitled to recover the uninsured motorist coverage on all three of the automobiles insured under the policy.

The Hawaii Court allowed the stacking of the three policies and stated:

. . . . separate uninsured motorist coverage in at least the minimum statutorily required amounts must be provided for *each* automobile insured under a policy of liability insurance. Therefore, when two or more motor vehicles are insured under a single liability insurance policy, separate uninsured motorist insurance coverage is, in effect, created for each vehicle insured under the policy. Each vehicle insured under the policy thus carries a minimum of $10,000 in per person uninsured motorist insurance coverage.

\* \* \* \* \* \*

. . . . Since three vehicles were insured under the policy, three separate coverages of $10,000 were available to her. As we have stated, this coverage was available to her regardless of whether or not she was injured while in one of the insured vehicles. (emphasis in original)

59 Haw. at 48–9, 575 P.2d at 480.

Courts in other jurisdiction, when faced with similar factual situations, have allowed stacking of the policies where the insured

has purchased two or more policies and has paid separate premiums on them, where the economic loss exceeds the limits of one or more of the policies, where there exists no statutory prohibition against stacking, and where duplicate recovery will not occur.

In *Esler v. United Services Automobile Ass'n.*, 273 S.C. 264, 255 S.E.2d 676 (1979), appellant was struck by an automobile while on his bicycle, and sustained serious injuries. He had in effect one automobile policy with respondent USAA covering two automobiles. This policy provided no-fault personal injury protection in the amount of $2,500.00 for each car. Following settlement of the third party claim, appellant applied to USAA for payment of $5,000.00, constituting the combined total of the two personal injury protection coverages provided by USAA in appellant's policy. Respondent refused and appellant brought suit.

The court in dealing with the issue of stacking stated:

\* \* \* \* \* \*

Stacking was permitted, however, in the case of additional optional PIP [Personal Injury Protection] benefits because there was no prohibitory statutory language and two premiums were paid.

The crucial test to be applied in situations such as the present one is not the number of policies issued but rather the number of additional coverages which were separately contracted and paid for. Clearly in the instant case appellant contracted and paid for *additional* protection from respondent and should, therefore, be allowed the benefit of his bargain. (Emphasis in original.)

255 S.E.2d at 679.

*General Accident Group v. Shimp*, 147 N.J. Super. 404, 371 A.2d 358 (1977), considered whether multiple policies, providing uninsured motorist coverage and issued on cars owned by members of the same household, can be accumulated or pyramided to provide a larger fund from which plaintiff may recover.

The facts were that plaintiff's wife and child were killed in a multivehicle accident. Decedent Ann Shimp was an additional insured described in two no-fault automobile policies issued by defendant. The estate did not claim a double recovery, but only sought to have available sufficient uninsured motorist coverage to satisfy the full amount of its damages.

The court looked to decisions in other States and found that Massachusetts had held the insurer liable on all policies issued by one insurer on several cars within the same household up to their cumulative maximum limits and cited *Johnson v. Travelers Indem. Company*, 359 Mass. 525, 269 N.E.2d 700 (Sup.Jud.Ct.1971) with approval. 147 N.J.Super. at 362, 371 A.2d at 362.

The *Shimp* court also discussed *McFarland v. Motor Club of American Ins. Co.*, 120 N.J.Super. 554, 295 A.2d 375 (Ch.Div. 1972), which held that an insured may proceed against other available policies when his loss exceeds the limits of one policy. 147 N.J.Super. at 413, 371 A.2d at 363.

The New Jersey Superior Court then held in *Shimp* that

[T]here were two separate policies covering the insured for separate time periods, two premiums paid, and plaintiff has recourse against both policies to recover his full damages.

*Id.*

The Supreme Court of Minnesota dealt with similar no-fault stacking arguments in *Wasche v. Milbank Mut. Ins. Co.*, 268 N.W.2d 913 (Minn.1978). *Wasche* involved the consolidation of two cases. In the first case, Delores Wasche owned two automobiles and maintained separate reparation plans for each automobile. Both no-fault policies were written by Milbank Mutual Insurance Company. Each policy provided coverage for no-fault basic economic loss benefits in the maximum amounts required by the Minnesota No-Fault Automobile Act, which were $20,000 for medical expenses and $10,000 for replacement services, including $1,250 for funeral expense benefits, for injury to any one person.

Mrs. Crescentia Wasche, mother-in-law of Delores and living with her, was a passenger in a vehicle involved in an automobile collision in California. As a result of her injuries, her medical expenses were in excess of $46,913.40 and upon her subsequent

death, her funeral expenses were $1,966. The personal representative of Mrs. Wasche's estate sought to recover basic economic loss benefits upon both no-fault policies to the extent of actual losses up to the stacked policy limits of $40,000 for medical expenses and $2,500 for funeral expenses. Milbank tendered payment of $21,250, the policy limits of one of the policies and then claimed that they had fully complied with the insurance policy and the requirements of the Minnesota No-Fault Automobile Insurance Act.

In the second case, *Bock v. Milbank Mut. Ins. Co.*, Clark Bock was seriously injured in a single-car accident. He incurred medical expenses in excess of $20,000. At the time of the accident, Clark Bock owned two vehicles, and each was insured in his name under separate no-fault policies from Mutual Service Casualty Insurance Company.

The issue before the Minnesota court was whether stacking of two or more no-fault policies was precluded by the No-Fault Act. The No-Fault Act required each automobile owner in this state to maintain a plan of reparation for personal injury and property damage as to each automobile. The basic economic loss benefits payable was to a maximum amount of $30,000 per person per injury, including $20,000 for medical expenses and $10,000 for disability and income loss and survivor's replacement services loss.

In order to answer the question whether the injured person may stack no-fault coverage so as to recover basic economic loss benefits to the extent of actual injuries up to the combined policy limits of all policies, the Minnesota Supreme Court looked at the no-fault statute. The statute described a maximum recovery of no-fault basic economic loss to a ceiling of $30,000.

The insurers argued that benefits were payable only once. However, the insurers agreed that the statutory language was intended merely to prevent double recovery of benefits for the same items of loss.

The Minnesota Supreme Court held that absent an express statutory prohibition of stacking in the no-fault context, the injured person was allowed to recover basic eco-nomic loss benefits under each no-fault coverage applicable to him as an insured to the extent of actual losses up to the stacked policy limits of all policies applicable, for "basic economic loss benefits [protect] persons, not vehicles...." 268 N.W.2d at 918.

The situation in the case before this court is similar. Nowhere in the Hawaii no-fault law or in the policies issued by State Farm is stacking of insurance policies prohibited. The only prohibition is against a duplicate recovery for the same items of loss.

The insurance companies are required by statute to provide optional additional insurance. Under Section 294–11(a)(3) the insurance carriers are required to make available to the insured:

\* \* \* \* \* \*

Additional coverage and benefits with respect to any injury, death, or any other loss from motor vehicle accidents or loss from operation of a motor vehicle.

I find and conclude that STANLEY YAMAGUCHI paid for *two* insurance policies with additional aggregate no-fault benefit limits on *both*, paid premiums on *both*, and should be allowed to receive the benefits of *both* his contracts. The actual loss sustained by STANLEY YAMAGUCHI's estate far exceeds the $100,000 maximum limit, and recovery of that $100,000 would not be duplicative of any other recovery.

The New Jersey Superior Court wrote in *General Accident Group v. Shimp, supra*:

\* \* \* \* \* \*

The purpose expressed for offering excess loss coverage is to provide for those motorists who desire a greater degree of first-party insurance protection and are willing to pay an additional premium charge. (Citation omitted.)

147 N.J.Super. at 409, 371 A.2d at 361.

### III

EVEN IF THE POLICY PROVISIONS WERE AMBIGUOUS, THE AMBIGUITY MUST BE RESOLVED AGAINST STATE FARM, AND RECOVERY ALLOWED.

Hawaii follows the well-established rule that an insurance policy must be construed

liberally in favor of the insured, and that any ambiguities must be resolved against the insurer. *E. g., Masaki v. Columbia Casualty Co.*, 48 Haw. 136, 395 P.2d 927 (1964).

The insurer is the one who has the primary duty to provide a clear and unambiguous policy. *Industrial Indemnity Co. v. Aetna Casualty and Surety Co.*, 465 F.2d 934 (9th Cir. 1972); *Law v. Hawaiian Life Insurance Co.*, 51 Haw. 288, 459 P.2d 195 (1969). Where an insurer creates or allows an ambiguity to exist in its policy, the policy must be strictly construed against it and in favor of the insured.

In the instant case, State Farm drafted a policy using the term "accidental harm" (specifically defined to include death) in its earnings loss provisions, even though alternate language—*i. e.*, "injury" (specifically defined *not* to include death)—existed. The only specified limits on liability for earnings loss due to death were the $1,200 per month ceiling and the $50,000 aggregate limit. In such a situation, any ambiguity caused by the term "accidental harm," or by the additional "survivors' loss" provision of the policy must be construed against State Farm and in favor Plaintiffs to give Plaintiffs a right to earnings loss benefits up to the policy's aggregate limits.

 I believe that it is very well settled that if an insurer wishes to limit its liability under its policy, it has the duty to doing so in language that is plain and clear to the lay purchaser of the policy. *See, e. g., Holt v. George Washington Life Insurance Co.*, 123 A.2d 619 (D.C.Ct.App.1956); *Canal Insurance Co. v. Sinclair*, 208 Kan. 753, 494 P.2d 1197 (1972); *Baldinger v. Consolidated Mutual Insurance Co.*, 15 A.D.2d 526, 222 N.Y.S.2d 736 (App.Div.1961), *aff'd*, 11 N.Y.2d 1026, 183 N.E.2d 908, 230 N.Y.S.2d 25 (1962). The rule is that all provisions, conditions or exceptions which in any way tend to limit or defeat liability under the policy should be construed most favorably to the insured. *Pierce v. Standard Accident Insurance Co.*, 70 Ill.App.2d 224, 216 N.E.2d 818 (1966); *First Insurance Co. of Hawaii v. Continental Casualty Co.*, 466 F.2d 807 (9th Cir. 1972); *AVEMCO Insur-*

*ance Co. v. Chung*, 388 F.Supp. 142 (D.Haw. 1975). *See Masaki v. Columbia Casualty Co., supra.*

In *American Insurance Co. v. Tutt*, 314 A.2d 481 (D.C.Ct.App.1974), the court stated:

It is the duty of insurer to "spell out in plainest terms—terms understandable to the man in the street—any exclusionary or delimiting policy provisions . . . ." *Raley v. Life & Casualty Insurance Co.*, 117 A.2d 110, 113 (D.C.Ct.App.1955), quoted with approval in *Holt v. George Washington Life Insurance Co.*, 123 A.2d 619, 621 (D.C.Ct.App.1956). That is, they shall use "language which unambiguously conveys such an intent to the mind of an ordinary layman. Failing such unambiguous language, doubt should be resolved in favor of the insured." *Buchanan v. Massachusetts Protective Association*, 223 F.2d 609, 633 (D.C.Cir.), *cert. denied*, 350 U.S. 833, [76 S.Ct. 67, 100 L.Ed. 743] (1955); *Holt v. George Washington Life Insurance Co., supra.*

314 A.2d at 484–5.

In the instant case, it cannot be said that the survivor's loss provision in State Farm's policy uses "language which unambiguously conveys" an intent to limit work loss recovery or to prevent any work loss recovery where he receives survivors' loss benefits from a third party's insurance policy, "to the mind of an ordinary layman." *Id.* Failing such unambiguous language, all doubts must be resolved in favor of plaintiffs, and in favor of full coverage for work loss. *Id.* The policy also does not expressly include stacking of two or more policies where the economic loss exceeds the limits of one policy.

Hence, State Farm must bear full responsibility for the language (or lack thereof) in its insurance policies. If it had intended to limit work loss recovery by these provisions and to prohibit stacking of policies, it would have been exceedingly simple to insert provisions spelling out the limitations in specific and unambiguous terms.

In *Wheeler v. Employer's Mutual Casualty Co.*, 211 Kan. 100, 505 P.2d 768 (1973), the court stated:

> While we have a duty to consider the insurance contract as a whole, our duty is to ascertain what the insured, as a reasonable person, understood the policy to mean, not what the insurer actually intended. A contract of insurance should not be construed through the magnifying eye of the technical lawyer but rather from the standpoint of what an ordinary man would believe it to mean.

211 Kan. at 104, 505 P.2d at 772.

State Farm's policies expressly provide coverage for work loss caused by "accidental harm," including death. The policies contain only two express limitations on this recovery—the $1,200 monthly earnings limit and the $50,000 aggregate limit. The survivor's loss benefit provisions are separated from the work loss provisions. An ordinary man, such as STANLEY YAMAGUCHI, would rightly assume in reading the policy that it provided coverage up to the aggregate limits of both policies for earnings loss caused by death irregardless of payment of survivors' loss by another insurance policy. STANLEY YAMAGUCHI sought additional protection for himself and his spouse in purchasing increased benefit limits. State Farm should not be allowed to defeat this protection. The policy did not expressly prohibit the combining of MR. YAMAGUCHI's two policies should his work loss or medical expenses exceed the limits of one policy. The only prohibition was in reference to a duplicative recovery. MR. YAMAGUCHI reasonably could expect his policies to be combined, and to cover his work loss so long as the recovery made did not duplicate any other recovery. In this case the recovery sought by MR. YAMAGUCHI's estate is in conformance with his expectations and is not duplicative in any respect.

In the instant case, the governing statute and regulations mandate minimum coverage for earnings loss caused by death. Where additional policy coverage is provided for, the resolution of any ambiguities in State Farm's policies must be made in Plaintiffs' favor, and Plaintiffs are clearly entitled to recover no-fault benefits up to the aggregate limits of the policies in addition to any other no-fault benefits they may also receive.

IV

## HAWAII STATE COURTS AND THIS COURT HAVE RULED AGAINST THE INSURERS IN SIMILAR CASES.

While there are no Hawaii Supreme Court cases on this particular point, the issue involved herein was litigated and resolved against the insurers at the trial court level in two recent Hawaii Circuit Court cases. State Farm was a defendant in one of those cases. Neither of the cases is on appeal.

In *Lim v. First Insurance Company of Hawaii, Ltd.*, Civil No. 50713 in the Circuit Court of the First Circuit, State of Hawaii, the no-fault insured had a policy with a $30,000 aggregate no-fault limit. The insured, Mr. Lim, was involved in an accident while driving his automobile, and died the next day as a result thereof. At the time of the accident, Lim was 31 years old, gainfully employed and earning approximately $1,000 per month. Lim's spouse and dependent children made a claim for no-fault benefits up to the aggregate limit, based on Mr. Lim's earnings loss. The insurer conceded liability for medical and funeral expenses, for earnings loss for the two days Mr. Lim was hospitalized before his death, and for an additional $15,000 for survivors' loss. However, the insurer refused to tender the aggregate limit. Suit was filed, and by written order filed March 6, 1978, the Honorable Arthur S. K. Fong, State Circuit Judge, granted summary judgment to plaintiffs up to the aggregate limit of the policy.

In the subsequent case of *Berger v. State Farm Mutual Automobile Insurance Co.*, Civil No. 54908 in the Circuit Court of the First Circuit, State of Hawaii, one Wright was insured by State Farm under a no-fault policy with "P3" coverage ($50,000 aggre-

gate limit)—similar coverage involved in the instant case. On April 8, 1976, Wright, while driving his automobile, struck one Berger, a pedestrian. Berger subsequently died as a result of the accident on June 18, 1976. At the time of the accident, Berger was 34 years old, gainfully employed and earning approximately $400.00 per month, according to the complaint filed in the case.

Berger was an "eligible injured person" for the purposes of the no-fault benefits under State Farm's policy. Berger's spouse and dependent children claimed no-fault benefits—including work loss benefits—up to the policy's aggregate $50,000 no-fault limit. State Farm paid the funeral and medical expenses and the work loss for the period before Berger's death. Following an arbitration proceedings, it also was ordered to pay an additional $15,000 for survivor's benefits. However, State Farm refused to pay benefits up to the aggregate limit of the policy.

Mr. Berger's spouse and dependents then brought suit against State Farm to recover the aggregate $50,000 limit. In that suit, State Farm was represented by the same law firm as in the instant case.

At a hearing on plaintiffs' motion for summary judgment, on December 4, 1978, the Honorable James S. Burns, State Circuit Judge, specifically ruled that wage loss no-fault benefits were payable notwithstanding the death of the injured party. Judge Burns held State Farm liable for no-fault wage loss benefits up to the aggregate limit of the policy.

As State Circuit Court decisions, the preceding cases are entitled to "proper regard" in this court's determination of applicable State law. *Commissioner v. Estate of Bosch*, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967). A similar situation was presented to the court in *Maryland Casualty Co. v. Burley*, 345 F.2d 138 (4th Cir. 1965). In that case, a declaratory judgment action brought by two liability insurers against their insured, the issue was the validity of an "escape clause" in a policy under Virginia law. The Fourth Circuit, after noting the lack of a case on point by

the Supreme Court of Virginia, stated as follows:

\* \* \* \* \* \*

It is regrettable that two insurance companies operating in Virginia should avoid resort to the only court that is empowered to give a final authoritative answer to this question of statutory construction. We note the frequency of litigation of this character in the federal courts when the state forum is the more appropriate one.

A state trial court, however, has ruled that the clause is void because it violates 38.1–381, Code of Virginia (1950). *State Farm Mutual Automobile Ins. Co. v. Universal Underwriters Ins. Co.*, Charlottesville Corporation Court, July 22, 1964. While in the absence of a ruling by the highest court of the state we are not bound to follow this decision, we nevertheless join the District Court in *deferring to the only available judicial interpretation of Virginia law and adopt it for the purposes of this case* .... (Emphasis supplied.)

345 F.2d at 139–40.

This court in *State Farm v. Bowen*, Civil No. 79–0282, decision rendered on April 10, 1980, granted partial summary judgment on behalf of Mrs. Bowen.

In *Bowen*, State Farm issued a similar insurance policy to Mr. John R. Bowen. Mr. Bowen purchased additional coverage under "P3" which increased the aggregate no-fault benefit limit from $15,000 to $50,-000.

Mr. Bowen died as a result of a one-car automobile accident, and at the time of his death, he was employed by the United States Coast Guard as an electronics technician third class.

A claim was made by Mrs. Bowen for the $50,000 benefits, including funeral expenses and earnings loss, caused by the death of her husband. State Farm refused to tender the $50,000, and suit was brought. The same arguments raised and considered herein are applicable to this case.

**202**

This court granted partial summary judgment on behalf of Mrs. Bowen. This court held that the law had already been determined by the State courts and that this court was bound by it. This court went on to say that the statute did not preclude recovery by the survivors, and that the policy issued by State Farm was "ambiguous and under those circumstances should be interpreted to cover in the manner requested by the plaintiff."

The facts in this case and in *Bowen* are nearly identical. The policies issued to Mr. Bowen and MR. YAMAGUCHI are identical except for the fact that Mr. Bowen purchased P3 and MR. YAMAGUCHI P5 of the Additional No-Fault Coverage Endorsement.

This decision is longer than expected. All points raised by counsel were given full consideration. For example, the court fully considered the issue of deducting $15,000 from the $100,000.00, a question raised by defendant. This question like the others were solved by the general rule that policy provisions ambiguous on the face are construed against the insurer. There were other minor points raised but the decision is intended to cover the major and material points raised by counsel.

As aforestated in this opinion, this court will not at this time pass on the question of attorneys' fees, costs and interest presented by Plaintiffs' complaint. Also reserved for future resolution are Plaintiffs' claims for general damages, damages for severe emotional distress and disappointment, and for punitive damages.

This decision is on Plaintiffs' motion for partial summary judgment and defendant's motion for partial summary judgment. In accordance with my above discussion, it is the decision of this court:

1. Defendant's motion for partial summary judgment be and is hereby denied.
2. Plaintiffs' motion for partial summary judgment be and is hereby allowed allowing a recovery of $50,000 on policy No. 145–635–E11–51A and $50,000 on policy No. 231–526–C23–51 or a total of $100,000.